## WATSON'S EXECUTORS *vs.* McLAREN.

A general guaranty in the words "I hereby guarantee the payment of a note made by, &c." without naming any person as the party guaranteed, is a valid instrument, and may be enforced by any one who advances money upon it, and he may in an action on the guaranty declare as upon a promise to himself.

But such guaranty is not negotiable, so that an action may be brought upon it in the name of any person other than him in whose hands it first became available, unless it be upon the note, the payment of which it guarantees; if it be upon the note, it may be treated as an endorsment, having the quality of negotiability with the further benefit of a waiver of demand and notice.

On a writ of error, variances between instruments in writing produced in evidence on the trial and the description of them in the declaration, cannot be urged in reversal of the judgment, unless specifically pointed out on the trial; a general objection of variance is not sufficient.

Nor can it be urged in error that it does not appear that demand of payment and notice of protest was given to endorsers, where the guaranty is for the payment of a note upon which there are several endorsers, if such objection was not raised at the trial.

Where a guaranty is given for the payment of a promissory note, which note is particularly described in the instrument, and the note produced on the trial corresponds in amount, date and time of payment, but varies in other particulars, the objections of variance will not be heard on a writ of error, if it was not urged on the trial.

It seems too that when the guaranty is an absolute promise to pay, and not a mere guaranty for collection, and an advance of money is made upon the strength of the declaration of its validity by the guarantor, that the guarantor would be held liable although there should be no note in existence.

In a guaranty to pay the debt of another, the words "for value received" is a sufficient expressing of the consideration to render the instrument obligatory.

Declaring a note to be good, to one about to purchase it, or standing by in silence when it is transferred for consideration, is an estoppel in pais against a debtor.

It is no objection to a recovery upon a note that a practising attorney bought it, where it appears that he was already a creditor of the holder, and a jury are satisfied that the purchase was made for the purpose of securing a debt, and that there was no intent to evade the statute.

A transfer of a note at the risk of the party receiving the paper, leaves the implied warranty that the note is genuine, and a party to the transfer is not a competent witness in an action upon it if its genuineness be disputed; but to exclude the witness, the objection must be distinctly put upon that ground.

It seems that receiving a worthless note as payment, is not an extinguishment of a debt.

ERROR from the supreme court of the city of New York. McLaren brought an action of *assumpsit* against Joseph Watson. The declaration contained numerous *special counts* and also the *common money counts*. In the fourth count the plaintiff alleged that on the 28th April 1828, he being the owner and holder of a promissory note, bearing date on that day, whereby William A. Blackney and Edgar C. Blackney, jointly and severally sixty days after the date thereof, promised to pay to the order of William Watson $300 for value received, which note it was alleged had been endorsed in blank by the *payee*, by Daniel S. Tuthill and by William Watson, junior, the defendant in consideration of the premises and of a valuable consideration received of the plaintiff, made and subscribed an instrument in writing in these words; "New York, April 28, 1828. I hereby guar-
" antee the payment of a note at 60 days drawn by William
" A. Blackney and Edgar C. Blackney, payable to the order
" of William Watson (New Milford, Connecticut,) William
" Watson (393, Pearl Street,) and Daniel S. Tuthill (13,
" Christopher street,) for $300 for value received, dated
" April 28, 1828." The plaintiff then averred that the note of which he was the holder, and the note described in the guaranty, were one and the same, and that it remained due and unpaid. By means whereof the defendant became liable to pay the money in the note specified, and being so liable, promised to pay, &c. The defendant pleaded *non-as-sumpsit* to this count. On the trial of the cause, the plaintiff produced the *note* and *guaranty* declared upon, the signa-tures of the parties to which were admitted, and called Daniel M. Frye, who testified that he received the note and guaranty from Daniel S. Tuthill, one of the endorsers of the note, shortly after the date of the same, in security for $200 advanced at the time to Tuthill, *and for* $100 *previously lent* in the witness' note which he, the witness, had subse-quently paid; that before making such advance, he called upon the defendant, showed him the note and guaranty, told him he was about to advance money upon the securities, and asked him if it was right, and received for answer " it was good." The witness further testified that in Septem-

ber, 1832, he passed the note and guaranty to the plaintiff in part payment of promissory notes to the amount of $1500, which the plaintiff held against him; that the plaintiff received the note and guaranty as cash, and at his own risk, and with knowledge that his, the witness' title to it was *disputed*. He further testified that the note for $1500 had since been surrendered by the plaintiff. On his cross-examination he stated that at the time he received the note and guaranty from Tuthill, he was a *practising attorney* in the city of New York. This witness was objected to as incompetent on the ground of interest. In addition to the facts above stated as testified to by him, he stated that after the transfer of the note and guaranty to the plaintiff, he voluntarily gave to the plaintiff a guaranty, which had been since surrendered to render him a competent witness. The judge overruled the objection and the defendant's counsel excepted. On this evidence the plaintiff rested. The counsel for the defendant moved for a *nonsuit* on the following grounds: 1. That Frye, being a *practising attorney* at the time he became possessed of the securities, no action could be maintained upon them; 2. That the note and guaranty produced on the trial *varied* from the instruments set forth in the declaration; 3. That the guaranty being a *separate* and *distinct* instrument was *not negotiable*, and consequently an action thereon could not be maintained in the name of the plaintiff; 4. That the guaranty was void, *no promisee* being named therein; or if not void for that cause, it was not proved that the contract of guaranty was made with the plaintiff; 5. That the guaranty was void for want of a consideration expressed, that the words "for value received" do not import or show any consideration, that they are merely descriptive of the note referred to; and 6. That there was no proof of demand of payment of note and notice to the endorsers as averred in two counts of the declaration. The judge presiding at the trial refused to grant the nonsuit, and the defendant's counsel excepted. The defendant then called William A. Blackney, one of the makers of the note, as a witness, who testified that the guaranty was given for the accommodation of the makers, and that Frye had *fraudulently*

UTICA,
July, 1838.
~~~~~
Watson's
Executors
v.
McLaren.

obtained possession of the securities; to rebut which testimony the plaintiff adduced evidence in reply. The evidence being closed, the counsel for the defendant requested the presiding judge to charge the jury that if from the evidence they believed that the guaranty was given merely for the accommodation of the makers of the note, that the plaintiff would be entitled to recover only the $200 advanced by Frye with the interest thereof. The judge refused so to charge, and directed the jury that if they credited the testimony adduced on the part of the plaintiff, he was entitled to their verdict for the full amount of the $300 note and interest; to which charge the defendant's counsel excepted. The jury found for the plaintiff. The defendant sued out a writ of error, and having *died* previous to the argument of the cause, his *executors* were substituted as plaintiffs in error.

*C. O'Conner*, for the plaintiffs in error, insisted upon the points raised at the trial on the motion for a nonsuit, and two additional points, viz. 1. That there was no proof of the existence of such a note as was described in the guaranty, and 2. That Watson, the *guarantor*, was merely a *surety*, and all the prior parties, endorsers, as well as makers, stood in the relation of *principals* to him, and no proof having been given of a demand of payment of the makers and notice to the endorsers, the latter were discharged; and being discharged, the holder of the note had lost his remedy against the guarantor.

*W. Kent*, for the defendant in error, contended, that Frye was a competent witness, not having any interest in the event of the suit, and that there was no validity in the objection that he was a *practising attorney* when he acquired control of the securities, because the manner in which he obtained the securities was not a *buying* within the prohibition of the statute; and besides the transaction was within the *proviso*. He insisted that the *guaranty* in this case was an absolute promise to pay at the maturity of the note, waiving demand and notice of non-payment, *Allen* v.

*Rightmere*, 20 Johns. R. 365, *Breed* v. *Hillhouse*, 7 Conn. R. 523, and was distinguishable in its nature from a guaranty of collection, an instrument like that declared on in *Lamourieux* v. *Hewitt*, 5 Wendell, 307, that it was appurtenant to the *note* and negotiable ; that its being on a separate piece of paper was no objection to it, for so may be an acceptance ; Chitty on Bills, 222 ; that there is nothing restrictive in it, and on the contrary its terms plainly indicate that it was meant to be negotiable, Chitty on Bills, 131, 3 T. R. 481, 1 H. Black. 569, *Upham* v. *Prince*, 12 Mass. R. 14 ; and being in all respects tantamount to an endorsement, there was no valid objection to its negotiability. It was made for a valuable consideration, the words *value received* being part of the guaranty, and not merely descriptive of the note as contended on the other side, and that the defendant was therefore estopped from denying that it was made on valuable consideration. It was simultaneous with the note in operation ; the date of the two instruments is the same, and they came into legal existence together. If the above propositions were correct, he contended that the note and guaranty were receivable in evidence under the money counts.

*By the Court,* COWEN, J. I am at a loss to conceive on what ground Frye could have been rejected as a witness interested to sustain the plaintiff's claim. The latter took the note and guaranty in question at his own risk without fraud ; and the guaranty of Frye had been delivered up and cancelled. This restored his competency. A transfer at the risk of the maker's solvency, or, which means the same thing, to be collected at the holder's own risk, still leaves the implied warranty that the note is genuine. *Herrick* v. *Whitney*, 15 Johns. R. 240, and vid. id. 241, note (a.) *Shaver* v. *Ehle*, 16 Johns. R. 201. *Murray* v. *Judah*, 6 Cowen, 484, 491. Where a man takes negotiable paper as cash at his own risk generally, and there is no fraud, all liability of the transferrer is cut off. Beside, Frye was not called to prove the genuineness of the defendant's signature, nor was that contested. It was in

*Margin note:*
UTICA, July, 1838.

Watson's Executors v. McLaren.

UTICA,
July, 1838.

Watson's
Executors
v.
McLaren.

fact admitted after the objection made to Frye had been overruled. Even where the implied warranty remains, or where there is an express warranty, if the defendant mean to exclude the witness upon the ground that the paper is forged, he should say so expressly; for that enables the plaintiff either to release the witness or remove the objection through full proof of the signature by other witnesses. When that is put beyond dispute it would be hypercritical and contrary to the principle which governs questions of competency, to say that the bare possibility of the witness still being made liable as upon simulated paper, should exclude him. *Williams* v. *Matthews*, 3 Cowen, 252, 260. *Murray* v. *Judah*, 6 id. 484, 491. It is said that a failure to collect this debt by the plaintiff will revive his claim against Frye. The answer has been already given; he took the paper as cash, and surrendered his notes. He took it as payment knowing all about the defence, and yet agreed to run all risk. He has surrendered Frye's guaranty with the express intent to make him competent. Various circumstances conspire to show an intent that no liability should remain. Surely a release under seal could have done no more. Admit that the naked circumstance of receiving a worthless note as payment will not extinguish the debt, according to the case cited by the counsel for the plaintiff in error, *Manufacturers & Mechanic's Bank* v. *Gore*, 15 Mass. R. 75, and to which many of our own cases might be added, yet here is much more than that simple act. No doubt the record in this suit would be evidence against Frye to show the failure of the security on the defendant's succeeding, according to the case cited to us of *Brewster* v. *Countryman,* 12 Wendell, 446, 450. But a warranty or some other ground of liability, must first be shown. We see that none was left.

Several particulars in which the proof is said to vary from those counts of the declaration upon which the cause was tried, are now for the first time pointed out: such as, that the *fourth* count supposes the guaranty to have been delivered *to the plaintiff* below; that the *fifth* supposes it to be an *endorsement;* the *sixth* avers that the note was negotia-

ble and delivered to the payee William Watson, and that the guaranty was payable to *order*, whereas the proof sustains none of these counts in the respects mentioned. Again : that the guaranty is a special contract, and therefore not within the general counts, and the admission, . *value received*, merely formal, &c. A single answer will suffice for these and the like objections, which come on the ground of variance. They were not raised at the trial. The objection was general, that the guaranty and note varied from each count. The objection stopped there. To be made available by exception, the particular discordances should have been pointed out, as they are now; for they were open to be obviated. Every conceivable objection which can be brought within the general one as made in the bill, of variances between the declaration and papers in evidence, are amendable by statute; and others now raised might perhaps have been obviated either on other principles of amendment, or the defect, on being pointed out, supplied by farther proof.

Upon the merits, the objection that no consideration is expressed in the guaranty, is not founded in fact. The words " for value received" are a sufficient expression. Nor will the objection lie that no consideration was in fact paid; the credibility of the plaintiff's testimony was submitted to the jury; and a part of it was the statement of Frye, that he took the note and advanced money, after he had apprized the defendant that such was his intention, and submitted the guaranty to him, he replying that it was *good*. Such a declaration, nay, even standing by in silence and seeing a chose in action assigned for consideration, is an estoppel *in pais* against a debtor. *Buchanan* v. *Taylor*, Addis. 155. *Ludwick* v. *Croll*, 2 Yates, 464. *Carnes* v. *Field*, id. 551. *Weaver* v. *M'Corcle*, 14 Serg. & Rawle, 304. *M'Mullen* v. *Wenner*, 16 id. 18. *Morrison's Admr.* v. *Beckwith*, 4 Monroe, 73. Even a defence that a bond was given to secure a gambling debt, was in one case held to be cut off by the obligor's admission of its validity to a proposed assignee, no stronger in its terms than the one here proved by Frye. *Davison* v. *Franklin*, 1 Barn. & Adolph.

142. Thus being validated, it must stand good for its face, the whole note described in it; and for that it passed, if for any part, to the plaintiff.

The objection that there is a variance between the note as described in the guaranty and the one in proof, was not raised upon the trial; and can not, therefore, now be heard. But an answer appears on the bill. The defendant admitted the guaranty to be valid; it is a contract perfect in itself to pay 300 dollars. Frye, perhaps the plaintiff, acted on the faith of the admission, and to allow an objection founded on a misdescription, would be to sanction a defence quite ungracious, not to say positively fraudulent. A man chooses to describe and agree to pay a note to another which has no existence, upon a valuable original consideration received. Is it to be endured that by his own misdescription, or the fact that no such note exists, he shall escape all liability on his contract? In effect, the defendant below did so agree and rather than he should escape on the ground that there was no note, the law will make the guaranty in legal effect a stipulation that there was such a note, and hold him in that form. But it is enough that this point is not, as a matter of variance, before us.

Another objection now raised, was not made at the trial, and therefore is not tangible on error. It is that the defendant was a surety for endorsers as well as makers; that the plaintiff discharged the endorsers on the note by omitting the usual demand and notice; and therefore the defendant is discharged by the *laches* of the holder. Nothing is said of surety, or his protection against any omission by the plaintiff, in the bill of exceptions. Had it been, demand and notice might have been shown; or it might have been proved that the defendant had waived it, or that he was principal in the transaction.

That Frye was an attorney and counsellor at law when he obtained the note from Tuthill, was made a distinct objection at the trial. The statute of April 21, 1818, Sess. Laws of that year, p. 278, § 1, 2, was in force at the time. Section 2 made the purchase of a chose in action by an attorney, &c. a ground of defence against a suit upon it.

*People* v. *Walbridge*, 3 Wendell, 120. The answering ar-
gument is, that here the note and guaranty were received *bona
fide* in payment of an antecedent debt, which was allowed by
a proviso in the statute. § 1. I think the jury might so find,
on the proof, and that the judge therefore properly refused to
nonsuit. Allowing the object to have been the payment of
Frye's previous loan, unmixed with any intent to evade the
statute, we think he stood, within the proviso, although, in
order to attain the desired security, he was under the necessity
of making the additional and, it is true, comparatively large
advance of 200 dollars. We are to intend that the case was
properly submitted to the jury in this respect, as nothing
appears in the bill to the contrary.

We now come to the remedy upon the guaranty, which
was evidently intended by the defendant to travel with the
promissory note, and secure whomsoever might take and
hold it on the faith of the guaranty. It contains all the
usual requisites of a guaranty except the name of the par-
ticular guarantee; and that it could not do, because as yet
he was not known. Finally, however, with the privity of
the guarantor, a guarantee comes, in the person of Frye.
He advances the money, and takes the paper. Surely there
can be no difficulty in saying that he acquired a right to
sue in his own name under the circumstances detailed by
him.

No name is necessary in the kind of guaranty with which
these parties were dealing, at least as far as Frye was con-
cerned. It was the obvious intent of the defendant below
to indemnify any man of the whole community, who should
advance money on the credit of the note, and especially on
the credit of the guaranty. Frye did so with full notice to
the defendant; and the previous floating promise then took
that of a direct one to him, and might be declared on as
having that legal effect. By making the guaranty with in-
tent that the Blackneys should take it and obtain money
upon it from such person as they pleased, the defendant
made them his agent to go in person or by Tuthill to Frye
or any other, and on procuring the money, the promise is
deemed, in legal effect, to have been made to him. It was

UTICA,
July, 1838.

Watson's
Executors
v.
McLaren.

at first a proposition to him and all the world, made on a valuable consideration ; and on his accepting it, the contract became complete, and may be made good by averment. *Watson* v. *Dodson*, 3 Car. & Payne, 162, per Gazelee, J. ; *Bradly* v. *Cary*, 8 Greenl. R. 234. In *Phillips* v. *Bateman*, 10 East, 355, it was not denied that a public promise by advertisement, to guaranty the notes of a bank upon which there was a run, would bind the promissor, and subject him to an action at the suit of those who should forbear to press the bank, provided a consideration had been duly expressed, and an intent had appeared so to pay, although no one could be named. The intent is the question ; and the payee may be indicated by extrinsic proof. *Brown* v. *Gilman*, 13 Mass. R. 158, and the cases there cited ; *Douglass* v. *Wilkeson*, 6 Wendell, 637, 644, and the cases there cited.

The case might, at any rate, have been brought within the common counts at the suit of Frye, according to *Trustees of Farmington Academy* v. *Allen*, 14 Mass. R. 172. There, the defendant, without consideration, became a subscriber for 50 dollars to erect an academy, naming no one as payee, and there being no consideration. It was held that the plaintiffs having paid money for the building, with the defendant's knowledge, might recover as for money paid.

Frye sold the note to the plaintiff below, with the guaranty, which was a separate instrument or contract made, as we have just seen, in legal effect with Frye ; and the great question is, whether it was negotiable. It is not denied that, as a general rule, one can not become a party to negotiable paper unless his name appear upon the paper *itself* ; but it is said that in this case the making of the guaranty intended to run with the note, was equivalent to an endorsement ; and being absolute, it was equal to an endorsement with waiver of demand and notice. We are referred to *Upham* v. *Prince*, 12 Mass. Rep. 14. There the defendant Prince, to whose order the note was payable on demand, endorsed it thus : " I guarantee the payment of this note within six months." He delivered it thus endorsed, to one Faulkner, for value ; and he transferred it to the plaintiffs. The court

held that the *note* passed to Faulkner, who might transfer it to the plaintiff. Yet even in that case, they doubted whether the *guaranty as such*, would pass beyond Faulkner; and so express themselves. They say " the defendant's engagement amounts to a promise that the note should, at all events, be paid within six months. Now THIS PROMISE may not be assignable in law, and yet *the note* itself may be assignable by the party to whom it was so transferred, so that, upon the non-payment of it by the promissor, the holder would have a right of action against Prince, *as endorser.*" But in that case, the guaranty was departed from; the defendant was sued *as endorser*, and the usual demand and notice were shown in order to charge him. That case shows that the endorser may stand in the double relation of an express *gurantor* and an implied *endorser*, being treated as the former by his immediate guarantee, and the latter by a remote transferree. In the case at bar, the defendant's name was not on the note ; nor was he treated as a simple endorser. No demand or notice was shown, and this defect was objected at the trial, as a failure of proof on the merits. The guaranty here is indeed absolute, according to the cases cited of *Allen* v. *Rightmere*, 20 Johns. 365, and *Breed* v. *Hillhouse*, 7 Conn. Rep. 523; this however is only a farther departure from the character of a simple endorsement.

But if the guaranty stood *on the note*, and admitting that then we must allow it to enure and be treated as an endorsement, and even an endorsement having the quality of negotiability with a waiver of demand and notice, the case is still short of the general rule. It is *not on the note*. *Douglass* v. *Wilkeson*, 6 Wendell, 639, per. Cur. Per Sewall, J. in *Tyler* v. *Binney*, 7 Mass. R. 481. Per Eyre, Ch. B. in *Gibson* v. *Minet*, 1 H. Black. 605, 6. Chit. on Bills, 30, Am. ed. of 1836, and the cases there cited. In the book last cited the law is thus stated : " It is a general rule that no person can be considered as a party to a bill, unless his name, or the name of the firm of which he is a partner, appear on some part of it." Again, " If there be not room on the bill, others may be added on an annexed paper called

*un allonge.*" There are doubtless exceptions, such as a separate acceptance. Chit. on Bills Am. ed. of 1836, p. 326, and cases there cited. Nor is it necessary to deny that, in analogy to that, an endorsement, which is another bill of exchange, may be made in the same manner. "Some times," says Mr. Chitty, "on a transfer of bills or notes, a party may object to endorse, but yet will *collaterally guaranty* the payment." He then proceeds to give various forms of valid guaranties, absolute and qualified, and adds, that "even in those cases where a valid engagement has been made that a bill or note shall be paid, it is effectual only between the original parties to it, and not transferrible at law or in equity, or in bankruptcy; nor can the action or proof be upon it, as in the case of the endorsement of a bill or note; but it must be on the special agreement, or the consideration which existed before, or passed at the time of the transfer." Id. 272, 3, and the cases there cited. Indeed the rule has been expressly held in nearly the same language by this court, even of an endorsed guaranty, *Lamorieux* v. *Hewitt*, 5 Wendell, 307; and previously by the supreme court of Massachusetts, *Tyler* v. *Binney*, 7 Mass. R. 479. We are furnished with no case, nor dictum to the contrary; and it seems to us that, by sustaining this judgment, we should confound all distinction between an endorsement and a guaranty. In so doing we should violate the law as long understood and acted upon by the mercantile community, and frustrate the intent of the defendant below. A separate guaranty of a negotiable note or bill does not, like an acceptance or endorsement, run with its principal, but must end where it began, like a bond or other like chose in action. The action therefore should have been in the name of Frye. In rendering judgment for M'Laren there was error, and it must be reversed.