By the Court, Bronson, J.
As the defendants are not in any way parties to the three bills drawn by Demarest on the *638 house of W. & J. Brown & Co. of Liverpool, the plaintiffs have grounded their action on the letters of credit which the defendants gave to Smith & Town. It appears from the special verdict that the advances of the Liverpool house to Smith & Town, at the time these bills were presented for acceptance, amounted to nearly £27,000 sterling, or nearly twice the amount of credit created by the letters; but at the time the bills were protested for non-payment, the uncovered acceptances of the house amounted only to the sum of £10,579.0.3 sterling, which would leave then open a balance of the credit equal to the sum of £4420.19. 9 sterling; and to that extent the plaintiffs insist that the Liverpool house should have accepted and paid the bills in question, which amounted in the aggregate to five thousand pounds sterling. The superior court held that there was such a privity of contract between the parties that the plaintiffs could maintain the action; but that they could only recover the amount, with interest and charges, of the bill for £1187.10, which was drawn at sixty days sight, without recovering any thing on account of the other two bills, both of which were drawn at ninety days sight. Both parties are dissatisfied with this judgment, and have brought writs of error. In the review, I will first consider whether the plaintiffs have any ground for complaint; and in doing so I will assume every thing in favor of the claim, excepting the single inquiry whether the two ninety-day bills were drawn in pursuance of the letters of credit.
Under the first letter, a credit to the extent of £10,000 was opened, which was to be used by the drafts of Demarest on W. & J. Brown & Co. of Liverpool, at sixty days sight. Although the second letter does not in terms refer to the first, it is plainly based upon it. The defendants say, “ we beg leave to open, in addition to the credit now in favor of Mr. James .Demarest for ten thousand pounds, a further credit in favor of same for five thousand pounds, making the credit in his favor on account of said friends, Messrs. Smith & Town, £15,000 sterling,” to expire at the same time with the original credit. It cannot, I think, admit of a serious doubt that the parties intended the whole *639 credit should he used in the same way. True, the second letter does not in so many words say, that Demarest is to draw bills for the additional £5000, or if he does draw, that the bills are to be made payable at any particular time; but by referring to and enlarging the original credit, the parties have plainly enough expressed the intention that the whole credit should be used in the manner which had already been pointed out. The bills in question were not drawn until long after the two first letters had expired by their own limitation, and the plaintiffs are obliged to resort to the third letter in connection with the others to make out their case; and that letter only refers to the former transactions in the same general way that the second letter refers to the first. It does not create a new credit, but only renews or continues the one already existing; and that is not mentioned in the plural, as though there were two credits which might be used in different modes, but it is mentioned as “ the credit,” in the singular, “for £15,000.” It is neither usual, nor can it be necessary for business men to make express reference, in every new communication, to that which has gone before it; nor can it be necessary, in making some new modification of an existing arrangement, to repeat the terms of the original agreement. Its governing influence will continue so far as it rer mains unchanged. Here the parties provided in the first instance for a credit of £10,000, to be used ip a particular manner. They subsequently stipulated—not for a new or independent credit—but for an “addition” of £5000 to the original credit, making the whole £15,000. And when the time was about to expire, they “ renew” or continue •“ the credit,” to wit, for “ fifteen thousand pounds” for one year. These letters must all be read and" construed together as forming but one contract or arrangement; and we cannot, without shutting our eyes against the light, say that there were two credits at the time these bills were drawn, or that Demarest was at liberty to draw in any other form than at sixty days sight.
The two ninety-day bills were not drawn in pursuance of the letters, and the only remaining question upon this branch of the case is, whether the defendants can be charged on an *640 count of those bills. The defendants must be regarded as sureties, and Smith & Town as the principal debtors. This was not an arrangement for remitting the funds of Smith & Town from New-York to Liverpool; but it was one by means of which they were to obtain a credit in Liverpool, which, if used, would constitute them debtors to the house of Brown & Co., who would have the additional security of the defendants as guarantors for the payment of the debt. (See 1 Bell’s Com. 371; Story On bills, 546, § 463.) By the very terms of the instrument the defendants propose to ‘f open a credit” in favor of Smith & Town with the house in Liverpool, and they say to that house, “ you will of course keep Messrs. Smith & Town advised as the credit is used, and they will attend to placing you in funds" This is wholly inconsistent with the idea that the defendants sustained any other character than that of sureties for Smith & Town, who were the principal debtors; and all the other facts in the case are fully in accordance with this conclusion. It may be, though the fact is not found by the verdict, that the defendants were paid a commission on account of the liability which they incurred. But if that were so, they would still have the right to be treated as guarantors, and not as principal debtors.
If the defendants are to be regarded as sureties, it is then clear that they cannot be charged with the two bills which were not drawn in pursuance of the letters of credit. The doctrine is a familiar one that a surety can only be charged where the case is brought within the very terms of his contract. What may be thought a substantial performance on the part of the creditor will not answer. I need not go into the cases; but will refer to one or two by way of illustration. In Dobbin v. Bradley, (17 Wend. 422,) the defendant guaranteed the paper of Smith to be made payable at a particular bank. Smith gave his note to the plaintiffs in the course of the business mentioned in the guaranty, but made it payable generally, or in other words, without specifying any place of payment. And although the note was deposited in the particular bank before it came to maturity, it was held that the defendant was not liable. We refused to *641 go into the inquiry whether the surety had been injured, saying it was enough that the case did not come within the terms of the contract. (See in addition to the cases there cited, Whitcher v. Hall, 5 Barn. & Cress. 269.) The courts have held a uniform language on this subject. I will refer to only one other case in support of the principle. It is Bonser v. Cox, (4 Beavan, 379.) I have, however, seen nothing more than a note of the case, which is as follows: “A. agreed to become surety for B. for the repayment of an advance to be made in the shape of a draft at three months. The advance was made by an immediate payment: and held that the surety was discharged.” It may be that the report will not be found to bear out the abstract; but whether so or not, the principle is right. Courts are not at liberty to speculate upon the question whether the surety has or has not been injured by a departure from the terms of his contract.
It was said in argument, and it is one of the written points for the plaintiffs, that “ drawing the bills at ninety, instead of sixty days, was clearly to the advantage of Brown, Brothers & Co. It gave them a longer time to take up the bills, and to remit funds to Europe for that purpose; and it left them the use of the money for thirty days without interest.” This argument is based upon an erroneous assumption of facts. Brown, Brothers & Co. were not to take up the bills, nor to remit funds to Europe for that purpose; but Smith & Town were to “ attend to placing you [the Liverpool house] in funds.” But let us suppose that Brown, Brothers & Co. had by the contract made it their business to take up the bills in the first instance; or, to make the. case still more plain, had authorized Smith & Town to draw directly on them at sixty days. How could we in such a case undertake to say that ninety day bills were more beneficial to the sureties than bills drawn in the particular mode which they had specified 1 We have no means of entering into their minds, or discovering the motives which influenced them in fixing on the precise period of sixty days. It is one of those questions which judicial tribunals cannot investigate. We could do no more than to venture a guess on the subject, and a *642 surety is not bound to take the hazard of our guessing wrong. He has a right to say “ That is not my contractand so long as he can give this answer truly, he cannot be charged with the debt of his principal.
It is further urged that the defendants have waived the irregularity in drawing the ninety-day bills, because the house on which they were drawn placed their refusal to accept on other grounds than this irregularity. It is a matter of no consequence on what grounds the Liverpool house refused to act. If they had paid the bills, they could have had no recourse against the defendants. But it is said that two of the defendants are members of the Liverpool as well as the New-York house. No such fact is found by the verdict. The counsel infer it from an identity of names. I am not prepared to say that the same name on different sides of the Atlantic must necessarily, or even probably, stand for the same individual.(a) And besides, this is a special verdict, which should find facts, and not leave them to be made out by argument and inference. I will not therefore inquire what consequences might follow if the fact of identity were established, though so far as I can now see it would not alter the case.
The plaintiffs have not been injured by the judgment, and their writ of error must consequently fall to the ground. Let us now inquire whether the defendants have any ground for complaint. That will lead to a more particular examination of the nature of this contract.
Letters of credit usually contain a request that some one will advance money or sell goods to a third person, and an undertaking on the part of the writer that the debt which may be contracted by the third person in pursuance of the request shall be duly paid. These letters have been divided into two classes, general and special. They are general when addressed to any and all persons, without naming any one in particular. They are special when addressed to a particular individual or firm by *643 name. When the letter is addressed to all persons, it is in effect a request made to each and every one of them, and any individual may accept and act upon the proposition contained in it; and on his doing so, that which was before indefinite and at large, becomes definite and fixed: a contract immediately springs up between the person making the advance and the writer of the letter, and it is thenceforward the same thing in legal effect as though the name of the former had been inserted in the letter at the beginning. I can see no difficulty in this, for there is plainly a privity of contract between the parties. (Watson's executors v. McLaren, 19 Wend. 557, and 26 id. 425, S. C. in error; Boyce v. Edwards, 4 Wheat. 111; Adams v. Jones, 12 Peters, 207; Lawrason v. Mason, 3 Cranch, 492; Bradley v. Cary, 8 Greenl. 234; Russell v. Wiggin, 5 Law Reporter, 533, and S. C. Story on Bills, 546, note; And see Carnegie v. Morrison, 2 Metc. 381.) Whether this doctrine has not sometimes been carried beyond its legitimate limits, so as to make contracts where there was no privity between the parties, I will not now stop to inquire.
When the letter is special, or in other words, addressed to a particular individual, he alone has the right to act upon and acquire rights under it. If any one else attempts to accept and act upon the proposition contained in the letter, he comes in as a mere volunteer, and he cannot by thus thrusting himself forward create any legal obligation on the part of the writer. There has been no communication, and is no privity of contract between them. (Robbins v. Bingham, 4 John. 476; Walsh v. Bailie, 10 id. 180.) Now in this case the letters were special. They were addressed to Messrs. W. and J. Brown & Co., Liverpool, and to no one else. With that house, and that one only, the defendants proposed to make a contract; and I see no principle upon which any one else can come in and make himself a party to the agreement. The defendants requested Messrs. Brown & Co. to give a certain credit to Smith & Town, by way of paying the drafts of their agent, Demarest, to be negotiated in Bio de Janeiro; and promised Brown & Co. that Smith & Town would attend to placing them in funds. If Brown & Co. *644 had made the advance, and the principal debtors had failed to put them in funds, they might have had an action against the defendants on the letters of credit. But how can the plaintiffs sue? • They were not requested to give a credit to Smith & Town either by paying the bills, or in any other form. They have stepped in and advanced money as mere volunteers, and they can only sue upon the contracts to which they are parties, to wit, the' bills of exchange.
The special verdict finds that the plaintiffs took and paid for the bills “ upon the faith and strength of the said letters of credit.” This means, I suppose, that the plaintiffs believed, on seeing the letters, that Smith & Town had either credit or funds with the drawees, and consequently that the bills would be accepted and paid. They looked at the letters as matter of evidence, and arrived at the conclusion that the bills were probably good. But suppose they believed more, and thought they would have an action against the defendants in case the bills should not be duly honored by the drawees; that mistake could give them no legal rights. The whole case may be briefly; and •yet fairly, stated thus: “ A. requests B. to advance money to C. by way of accepting and paying his drafts, and undertakes that B. shall be reimbursed his advances. C. draws bills, and a stranger on seeing the letter is induced to believe the bills good, and takes them. Whatever may be his opinion about a remedy against A. in case the bills are not paid, in point of law he gives credit to C., the drawer of the bills, and to him only. There is no privity of contract between the stranger and A. who wrote the letter; there has been no dealing between them, and no action can be maintained.
In Russell v. Wiggin, (5 Law Reporter, 533, and Story On Bills, 546, note,) the defendants gave a letter of credit to Breed, by which they engaged to honor the bills which might he drawn in India by Breed’s agent. The agent drew bills on the defendants, which the plaintiffs took on the faith of the letter. The defendants refused to accept when the bills were presented, and the plaintiffs thereupon sued and recovered on the letter of credit. Mr. Justice Story went mainly upon the ground *645 that the letter amounted to a virtual acceptance of the bills. If that be so, and the action had been brought upon the bills themselves, there could be no good objection to the recovery.(a) But I should find great difficulty in saying that the plaintiffs could sue on the letter of credit, for the reason that they were not parties to it. I should agree with the four eminent English barristers who gave their opinion that by the law of England the action would not lie, because there was no privity of contract between the parties. But it is not necessary to pass upon that question, for here the defendants never agreed with any one that they would accept and pay bills. They only requested Brown & Co. to accept, and undertook to keep them indemnified. That was not a negotiable promise upon which the plaintiffs can sue. The case of Carnegie v. Morrison (2 Metc. 381) stands much upon the same principle with the one which has just been noticed, and calls for no additional remark.
It is said that by these letters the defendants made two engagements ; one with Brown & Co., to see their advances made good; and the other with Smith & Town, that the bills should be duly honored by the drawees. But how can this second agreement be made out ? There clearly are no express words of contract with Smith & Town, nor do 1 see that any agreement with them can be collected from'the instrument. The letters purport to have been written at the request of the friends who were to be benefitted by them, and no consideration of any kind is mentioned. The letters seem to have beeii an act of mere benevolence on the part of the defendants. If there had been a promise to Smith & Town, it would not do without a legal consideration to uphold it; but so far as appears upon the face of the instrument, there was neither .promise nor consideration. Looking beyond the instrument, we know that a commission is sometimes charged for letters of credit; but we know also that they are often given without any compensation: and clearly one who does such an act from no other motive than the desire to oblige a friend, is under no obligation to see that the re *646 ■quest is complied with by the person to whom it is ¡addressed. There are facts stated in the case from which it may be inferred that a commission was paid by Smith & Town for these ¡letters : but the fact of payment, if it exists, should have been found by the jury. This is a special verdict, and neither party has the right to ask the court to presume facts for the purpose of making out their case.
But let it be granted that the defendants made a valid agreement with Smith & Town that the bills should be duly honored by the drawees. Smith & Town may then have an action, and recover such damages as they have sustained by the breach of the agreement. But this was not a negotiable contract, and the plaintiffs cannot sue upon it. I am aware that a great effort has been made within the last few years to have every thing in the form of paper credit turned into a circulating medium, or, at the least, placed upon the footing, of bills of exchange and promissory notes; and if our overstrained credit system had held out a few years longer, I am not sure that the courts would have been able to resist the current which was setting so strongly in favor of negotiability. But now that the bubble has exploded, I trust the common law, which declares that choses in action are not assignable, will not be overturned. With us it is a settled question, that special contracts, other than bills of exchange and promissory notes, are not negotiable instruments, and that no one can sue in his own name but an original party to the contract. (Lamourieux v. Hewitt, 5 Wend. 307; Watson’s ex’rs v. McLaren, 19 id. 557, and S. C. in error, 26 id. 425; Miller v. Gaston, 2 Hill, 188.) And such is undoubtedly the law of England. (Chitty On Bills, 273, 308, ed. of 39.) Mr. Justice Story is evidently disposed to extend the doctrine of negotiability to letters of credit and commercial guaranties. (See Russell v. Wiggin, above cited, and Story On Bills, 534, 545.) But with us the rule is settled the other way, and we must take the law as we find it.
I see no principle upon which this action can be maintained. The judgment which was rendered for the plaintiffs must therefore be reversed, and judgment entered for the defendants.
-Ordered accordingly.

 See Cowen & Hill's Notes to Phill. Ev. 1301, 2.

 See The Ulster County Bank v. McFarlan, (ante, p. 432.)