JOSEPH D. WEBSTER, Appellant, *v.* JOHN M. COBB, Appellee.

APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

The holder of a negotiable note, indorsed in blank, may fill up the blank with such undertaking as is consistent with the nature of the instrument and the intention of the parties.

The signature of a third person in blank, on the back of a note in the hands of the payee, is presumptive evidence that it was placed there as a guaranty, at the time of the execution of the note.

A guaranty may be written over such a signature, at the trial of a suit upon it.

Upon an action upon such a guaranty, the party may show, after proving payment to the payee, that it was assigned under such circumstances as make it colorable, and defeat a recovery.

THIS judgment was rendered by J. M. WILSON, Judge, without the intervention of a jury, at February term, 1856, of the Common Pleas Court.

The plaintiff, in the first count in his declaration, declares upon a promissory note, alleged to have been made by one Henry Fowler, bearing date October 10th, 1852, and alleges that the said Henry Fowler, thereby, three years after the date of said note, for value received, promised to pay one Thomas A. Stewart, or order, ten hundred and eighty-three dollars, with interest, at bank, "and that the defendant, at the time of the making of the note and before the same was delivered to said Stewart,

and in consideration that said Stewart would accept the same, indorsed the said note in writing by the name and style of J. D. Webster, and the said Henry Fowler then and there delivered the said note, so indorsed, to said Stewart, and the said Stewart then and there accepted the said note, and afterwards and before the same became due, to wit: on the first day of September, A. D. 1855, assigned the said note by indorsement in writing and delivered the same so indorsed to the plaintiff, and thereby ordered and directed the said sum of money in said note specified to be paid to the plaintiff." The plaintiff further alleges that at the time the note became due, Fowler had left the State of Illinois, and has since continued absent from the State, so that process could not be served upon him, and that the institution and prosecution of a suit against Fowler would have been unavailing; and concludes that by reason whereof, and by form of the statute in such cases made and provided, the defendant became liable to pay, &c., and in consideration thereof promised to pay, &c.

In the second count the plaintiff alleges that on the 10th day of October aforesaid, Henry Fowler, for value received by him from said Stewart, made his certain promissory note in writing, bearing date on that day, and the said defendant then and there, in consideration of such value received, did undertake and faithfully promise to said Stewart that such note should be paid by said Fowler, when the same should become due and payable according to its terms and purport, which said note is in the words and figures following, to wit:

"$1,083.                                    *Chicago, October 10th,* 1852.

Three years after date, for value received, I promise to pay Thomas A. Stewart, or order, ten hundred and eighty-three dollars, with interest, at bank.

HENRY FOWLER."

And upon which note, at the time of the making thereof and delivery thereof to said Stewart, and to induce him to accept the same, the said defendant did make his certain promise and guarantee in writing on the back thereof, as follows: "For value received I do hereby guarantee the payment of the within note, when due." Which said note so indorsed was then and there delivered to said Stewart.

In the third count he declares against the defendant as a joint and several maker of a promissory note with one Henry Fowler.

In the fourth count the plaintiff alleges that Henry Fowler made the note to Henry Fowler or order, and that Stewart indorsed the note to defendant without recourse, and that the said defendant reindorsed and delivered the note to Stewart, and that Stewart afterwards indorsed and delivered the note to

the plaintiff, and that when the note became due, Fowler had left the State, and has since continued absent from the State, so that process could not be served upon him.

Then follows the money count, and an account stated.

The defendant filed, first, the plea of general issue.

Second, That after the making of the note, and before the assignment to the plaintiff, the defendant and one Timothy Wright sold a one-third interest in a newspaper establishment, known as the Chicago Daily Tribune, to said Stewart, in full satisfaction and discharge of the note, and that the assignment of the note to the plaintiff was made after its maturity, and that at the time of the assignment and prior thereto, the plaintiff had notice of the payment and satisfaction of the note.

The third plea differs from the second only in alleging that Henry Fowler and Timothy Wright sold the one-third interest.

And the fourth plea differs from the second only in alleging that Henry Fowler sold the one-third interest.

To each of the special pleas, the plaintiff replies: *First*, that the assignment was not made after, but before, the maturity of the note, and that the plaintiff had not, at the time of the assignment and prior thereto, notice of the payment and satisfaction of the note. And,

*Second*, he claims that the note was not paid and satisfied, as alleged by the defendant.

Similiter having been filed and issues being thus joined, on the trial the plaintiff offered in evidence a note in the words and figures following:

"$1,083.                                    *Chicago, October 10th,* 1852.

Three years after date, for value received, I promise to pay Thomas A. Stewart or order, ten hundred eighty-three dollars, with interest, at bank.

HENRY FOWLER."

With an indorsement thereon in blank, as follows: "J. D. Webster;" and the plaintiff's counsel filled up the blank indorsement by writing over the same the words following: "For value received, I do hereby guarantee the payment of the within note, when due," and proposed to read the same with the indorsement, in evidence to the court, under the issues in said cause, to which the defendant objected; but his objection was overruled, and the note was read in evidence, to which ruling of the court the defendant excepted.

The defendant then called as a witness Thomas A. Stewart, who had been duly subpœnaed and commanded to bring with him the articles of agreement between Joseph D. Webster, Timothy Wright and T. A. Stewart, for the sale to said Stewart of a one-third interest in a newspaper establishment, known as the

Chicago Tribune, and setting forth the conditions of said sale. The witness stated that he had not had in his possession, at any time, an agreement executed by and between Timothy Wright, Joseph D. Webster and himself, for a sale to him, the witness, of a one-third interest in a newspaper establishment, known as the Chicago Daily Tribune, and for articles of copartnership between them; that he had, however, an agreement for the sale to him of such one-third interest, executed by Timothy Wright and himself, and containing articles of copartnership between them; that subsequently, and while the agreement was in the possession of Mr. Wright, and without the witness's consent, " & Co." was inserted after Mr. Wright's name in the agreement, and his signature and a clause that the company was Mr. " J. D. Webster," and that he was interested in the sale to the witness, his name for some reason not having been mentioned in the agreement, and that his (Webster's) interest continued, after the sale to the witness, in the establishment, and that subsequently, in 1854, Webster was recognized as a copartner by Wright and the witness. The witness further stated that the agreement was now in the hands of Mr. Anthony, one of the attorneys for the plaintiff, and that he, the witness, had delivered the agreement to Mr. Anthony.

The defendant's counsel here read to the court a notice which had been duly served upon the attorneys for the plaintiff, desiring them to produce at the trial a certain agreement in writing, bearing date the 24th of July, A. D. 1853, or thereabouts, between Joseph D. Webster, Timothy Wright and T. A. Stewart, for the sale to said Stewart of a one-third interest in a newspaper establishment, known as the Chicago Tribune, and being articles for a copartnership between said parties.

Plaintiff's counsel declining to produce the agreement, to prove the contents of the same, the defendant called as a witness, J. Medill, who stated that he was in the Tribune office, in Chicago, on the first day of September, A. D. 1855. That Mr. Timothy Wright, Joseph D. Webster and Stewart were there, trying to effect a settlement. That they had there an agreement in writing, purporting to have been executed by Timothy Wright, Joseph D. Webster and Thomas A. Stewart, as he, the witness, understood. He did not examine the signatures. That he, the witness, read a portion of the agreement—the first part of it— and that Mr. Wright read a portion of it there, in the hearing of the witness, and in the presence of Mr. Stewart, and that as he read along he spoke of or called attention to particular portions of the agreement. That he, the witness, could not distinguish between what was said and what was in writing, and that there seemed to be no misunderstanding as to what the writing

contained; that the parties did not settle; that Mr. Stewart got angry, took the writing and went away with it.   The agreement provided for the sale of a one-third interest in the printing establishment, known as the Chicago Daily Tribune, to Mr. Stewart, by Mr. Wright and Webster, as he, the witness, understood, and contained articles for a copartnership between the three; that Mr. Stewart, in part payment for such one-third interest, was to deliver up a certain promissory note, made by Henry Fowler, payable to Thomas A. Stewart, and indorsed by Webster; the note, the witness thinks, was for one thousand dollars, or something over that sum—he does not recollect the amount exactly; that this was stated in the agreement.   There was that note and one other small note, made by Mr. Fowler and indorsed by Mr. Wright, which was also to be delivered up in part payment for the one-third interest, that the balance was to be paid in money at appointed times, and that these were the only two notes mentioned in the agreement, and that the larger note for one thousand dollars or over, the witness thinks, was then about maturing, and that it would become due, according to the terms, the next month, or the month after, and that Mr. Stewart then admitted that the note had been paid, and promised to deliver it up to Mr. Webster.   The witness thinks the agreement bore date some time in July, A. D. 1853.

Mr. Stewart, being recalled, stated that the note referred to in the agreement, was the note upon which the action was brought; that he, the witness, took possession of the interest which he purchased in the Tribune Office, immediately after the execution of the agreement, and continued in the enjoyment of this interest until he sold out to Wright, Medill & Co., in June, A. D. 1854.

He further testified that he was a brother-in-law of the plaintiff, and that the plaintiff had, for the past two years, been living upon and carrying on the farm of the witness, at Crystal Lake, and that the witness had agreed with the plaintiff, that for making certain repairs in the fences, he, the plaintiff, might have the use of his farm.   That previous to his assigning the note to the plaintiff, the plaintiff wanted to leave his farm, and that the witness had agreed with him to purchase of him the crops on the farm, consisting of corn, about ten acres, which was then unharvested, and which the plaintiff was to harvest that fall, about twenty acres of oats, which were then in the stack, and which the plaintiff was to thrash, and some wheat, I don't know how much.   I was to take the farming utensils, also.   In pursuance of this agreement, I had taken possession of the farm about two or three weeks before the assignment of the note to the plaintiff. The plaintiff had never fixed upon any particular sum which the witness was to pay him for this property.   No bill of sale was

ever made out, though the witness believes they had made an estimate of its value, and he forgets what the estimate was, or how much they called it worth; they had fixed upon no time when the witness was to pay for it, though the witness says he knew the plaintiff would never press him for the pay, and would give him what time he wanted, and that he gave no note, or any other written obligation, to the plaintiff.

That on the first day of September, after the interview of the witness with Wright and Webster, when he, the witness, found that Mr. Wright would not pay him a demand which he held against him, he assigned the note to the plaintiff; that he did not tell the plaintiff that he had had any difficulty with Mr. Wright; that it was about two hours after he had this interview, on Saturday afternoon, and that the plaintiff was then in Chicago, and that he went immediately from the Tribune Office to the house of Mr. Thwing, in Chicago, and found the plaintiff there. That after the witness had written the assignment on the back of the note, he had Mr. Cobb called to his room, for he was then quite unwell and a good deal agitated, and asked the plaintiff, after he had shown him the note with the assignment he had made, if he would take the note in payment for the property. That the plaintiff replied that he would, if it would be any accommodation to him, the witness, and he did not want it. I then gave him the note, and the assignment was witnessed the next morning. That this was all that was said, and all the negotiation they had about it. That the plaintiff gave him no release, or anything of that kind; that nothing was then said about how much the witness was to pay him for the property, or when he was to pay him for it, and that this was the only consideration for the assignment of the note; that the plaintiff harvested the corn and thrashed the oats some time after.

Upon this evidence, the court found the issue for the plaintiff, and assessed the damages at the sum of $1,295. To which finding and decision of the court, the defendant excepted, entered a motion for a new trial, and the court overruling the motion for a new trial, the defendant excepted to the ruling and decision of the court, and prayed an appeal to the Supreme Court, which was allowed.

HOYNE and MILLER, for Appellant.

ELLIOT ANTHONY, for Appellee.

SKINNER, J. This was an action of assumpsit by Cobb against Webster, upon a guaranty of a promissory note, executed by one Fowler to one Stewart, who assigned the same to Cobb.

The second count of the declaration alleges the making of the note by Fowler; that Webster, at the same time, and before the delivery thereof to Stewart, in consideration thereof, and that Stewart would accept the same, did make his promise and guaranty, in writing, on the back thereof, as follows: "For value received, I do hereby guarantee the payment of the within note when due;" the assignment of the note by Stewart to Cobb, before the same became due, and that neither Fowler nor Webster have paid the same, &c.

Webster pleaded the general issue and special pleas, alleging payment of the note before the assignment to Stewart, and impeaching the good faith of the assignment. The cause was tried by the court, and judgment rendered in favor of Cobb for the amount of the note. On the trial the plaintiff read the note and assignment in evidence, with the signature of the defendant written and in blank on the back thereof. The defendant objected to this evidence, and the plaintiff then wrote over the signature of defendant the guaranty in the declaration set forth. To the reading of this guaranty in evidence the defendant objected, and the court overruled the objection. The only questions necessary for determination are: Had the plaintiff the right to fill up the blank over the signature of the defendant with the guaranty? Can the plaintiff maintain an action on the guaranty? And was the note assigned *bona fide*, so as to cut off the defence of payment to the payee, by the maker, before the assignment?

The proof shows that the signature of defendant was on the back of the note while in the hands of the payee, and that the payee assigned the note to the plaintiff in the same condition as it came to his hands. In the case of *Camden* v. *McCoy*, 3 Scam. 437, this court held the law to be, that the holder of a negotiable note, indorsed in blank, may fill up the blank with such undertaking as is consistent with the nature of the instrument and the intention of the parties; and that the signature of a third person, in blank, on the back of such note, while in the hands of the payee, is presumptive evidence that it was placed there at the time of the execution of the note as a guaranty.

The same doctrine is recognized in *Cushman* v. *Dement*, 3 Scam. 497; *Smith* v. *Finch*, 2 Scam. 321; *Carroll* v. *Weld*, 13 Ill. 682; and *Klein* v. *Currier*, 14 Ill. 237.

Where the note has been in circulation, and the name of a third person appears upon it in blank, it cannot be determined whether the name was placed there for the purposes of transfer and creating the liability of simple indorser, or for the purpose of absolute guaranty. The note, in the course of negotiation,

30

may have passed from holder to holder, by blank indorsement, and, therefore, no presumption, from the face of the instrument, can be raised, that the blank signature was placed there at the inception of note, as a guaranty. Here, the note was so indorsed at the time of its delivery to the payee, and passed, by assignment, directly from him to the plaintiff. The defendant could not, therefore, have been an intervening indorser.

The guaranty is such an one as the law, under the facts, implies, and was, therefore, rightfully written over the signature of the defendant, even at the trial. The guaranty is general, specifying no person to whom the guarantor undertakes to be liable, and is upon the back of a negotiable instrument. In such case, the guaranty runs with the instrument on which it is written, and to which it refers, partakes of its quality of negotiability, and any persons having the legal interest in the principal instrument, takes, in like manner, the incident, and may sue upon the guaranty. This view is consistent with the nature of the transaction, the evident intention of the parties, and the objects and uses of commercial paper. *Heaton* v. *Hulbert*, 3 Scam. 489; *Watson* v. *McLoren*, 19 Wend. 557; 26 Wend. 425; Story on Bills, 536; *Adams* v. *Jones*, 12 Peters, 207; *Walton* v. *Dodson*, 3 Carr. & Payne, 163; *Bradley* v. *Carey*, 3 Greenleaf, 233.

The defendant proved the payment of the note to the payee, Stewart, before the assignment to the plaintiff, and called Stewart to impeach the assignment. From Stewart's testimony, it appears that he had a difficulty with Webster, and others connected with the transaction out of which the note arose, and that Stewart, upon the refusal of one of the parties to pay him a demand, wrote an assignment of the note to the plaintiff, his brother-in-law, which assignment was also witnessed; that Stewart, being somewhat excited and unwell, sent for the plaintiff, showed him the note and assignment, and asked him if he would take the note in payment of certain property plaintiff was to let Stewart have; that plaintiff replied that he would if it would be any accommodation to Stewart, and he did not want it; and, that the note, without further ceremony, was delivered to plaintiff; that plaintiff lived on a farm of Stewart's, and had the use of it for repairs and fencing; that, before then, plaintiff desiring to leave the farm, Stewart had agreed to purchase plaintiff's crops on the farm, consisting of some ten acres of corn, twenty acres of oats, and some farming utensils; that no price for the property nor time of payment was agreed on; that no bill of items was made, or receipt executed, nor could Stewart state the value of the property; that nothing more was said, and that the property was the only consideration for the assignment. We are satisfied that the assignment was merely colorable, and,

if so, it is no protection against the defence of payment. No reasonable man would dispose of a note, amounting to over $1,200, and become personally responsible as assignor in this hasty and unsatisfactory manner, regarding it a real transaction. He did not know the value of the property he was to get for the note, and, in all probability, it did not amount to one-fourth the amount of the note. The making of the assignment, and having the same witnessed, on the occurrence of the difficulty with Webster and others, the sending for the plaintiff, his brother-in-law, the disposition of the note to him without any satisfactory equivalent, upon the spur of the moment, and the accommodating willingness of plaintiff to accept the same without further inquiry, seem to us to mark a colorable transaction, invented to cut off the defence.

The judgment is reversed and the cause remanded.

*Judgment reversed.*