PETRIE *vs.* FEETER.

Where the maker of a note on its being presented to him by a person about to take a transfer of it, acknowledges himself to be *holden for its payment* and the note is purchased for value, and the maker subsequently makes a payment upon it, he cannot afterwards sue to *recover back the money* thus paid, although he shows that he signed the note merely as *surety*, that it was paid by the *principal*, that it was *over due* at the time of the transfer, and that he made the acknowledgment of his liability *in ignorance of the payment* by the principal.

THIS was an action of *assumpsit*, tried at the Herkimer circuit, in November, 1837, before the Hon. JOHN WILLARD, one of the circuit judges.

The suit was brought to *recover back money paid* under the following circumstances: On 27th April, 1829, the plaintiff *John D. Petrie* signed a note as surety for *Adam Petrie*, payable to John Graves or *bearer*, for the sum of $554 95. The note was given to *Daniel Dygert* a deputy of John Graves, who was then sheriff of the county of Herkimer, in payment of certain property purchased by Adam

Petrie v. Feeter.

Petrie at sheriff's sale, and who agreed that whatever sum should be paid by Adam Petrie to *Jewett & Halsey* a mercantile firm in New York, for whose benefit the note was taken, should be credited upon this note. On 7th July, 1829, Adam Petrie paid to Jewett & Halsey $385 50, and transferred to them a note for $101 99, which was duly paid on 20th January, 1832; and on 1st May, 1832, *Jewett & Halsey* received the balance of the demand due to them, for the payment of which the above note of $554 95 was taken. Adam Petrie died in July or August, 1829. In the month of October, 1831, *Dygert* offered to sell the note of $554 95 to the defendant, who declined to purchase it without the consent of John D. Petrie. After this, Petrie called upon the defendant, and told him that he was willing that he should purchase the note; *that he was as willing to pay the money to him as any other man ;* that he had signed the note and *was holden to pay it.* Upon this the defendant bought the note of Dygert, paid him $218 in cash, and passed the residue to his credit on account. On the 18th October, 1831, Petrie gave his note to the defendant for $250, payable in four months at the Branch Bank at Utica, which when due was paid by Petrie. This note was endorsed upon the note for $554 95. The plaintiff upon the above state of facts claimed *to recover back* from the defendant the $250 paid by him as above, and the interest thereof. The judge ruled that he was entitled to recover, and the jury under the direction of the judge found a verdict for the plaintiff. The defendant asks a new trial.

*M. T. Reynolds*, for the defendant.

*D. Burwell & J. A. Spencer*, for the plaintiff.

*By the Court*, NELSON, Ch. J. I am unable to discover any principle that will justify the ruling of the learned judge at the circuit, unless the defendant is implicated in the *fraud* of Dygert, of which I see no evidence—none, certainly, which would warrant the conclusion as matter of law. To sustain a verdict in this case upon that ground, the point should have been found by the jury.

Petrie v. Feeter.

It is true the note was *over due*, but the defendant, before he took it, first consulted one of the makers, and purchased upon the faith of his statement; and the very payment now sought to be recovered back was made at the time.

Feeter advanced to Dygert, upon the strength of the note thus purchased, $218 in cash; and in the absence of bad faith, his equity to this amount is as strong and even stronger than the plaintiff's, who was acting under a mistake, because the defendant trusted to his representations that the note was a valid security. When the plaintiff urges that he was deceived by Dygert, the defendant may reply that he would also have been deceived, had he not taken the precaution to obtain his assent to the purchase. It is not for him now to retract, and shift the loss upon one who has acted under his advice. At most, the plaintiff could only be entitled to the difference between the two sums received and advanced by Feeter upon the note. But I do not see how any part of the payment can be recovered back.

Admitting that the note was received beyond the $218 for a *precedent debt*, the farthest the court has gone, where a note has been negotiated *in fraud of the maker*, is to allow the fact to be set up by way of *defence*. No case has been referred to where a suit has been sustained to recover back money paid by the maker in such a case, and, I venture to say, none can be found.

It is true the case is distinguishable from that class of cases, in this: that here *the fraud* upon the plaintiff in the negotiation was not discovered till after the payment. But *that* is his misfortune, and no fault of the defendant. This matter, when allowed by way of defence, stands upon a consideration of the equities existing between the parties; but I think it would be carrying them too far, and beyond the foundation and reason of the rule, to permit them to be turned into a *legal right*, upon which a suit may be sustained to recover back the money when paid.

New trial granted, costs to abide event.*

---

* See *Watson's ex'rs* v. *M'Laren*, 19 Wendell, 563, and the cases there cited, in support of the principal position in this case, that the maker is bound by his declaration that he was holden for the payment of the note.