GseeN, J.
delivered the opinion of the court.
The complainant, in September 1836, purchased a tract of land from J. H. & H. S. Morgan for the sum of ¿£4952, and executed his three several notes for the purchase money, the last one due in April 1839, for $1652.
In 1838, Vaden sent his cotton to the house of H. S. Morgan & Co. to be shipped by them, or to be held subject to his order. When Vaden called on them for his cotton, he found it had been sent to New Orleans and sold, and the proceeds applied to the credit of H. S. Morgan & Co. Vaden then called on Morgan for payment, which Morgan failing to make, Vaden became uneasy, and upon a second application agreed to take notes on other men in payment. Morgan, thereupon, transferred to Vaden, in part payment for his cotton, the above note on the complainant of $1652.
Soon after Vaden obtained the said note on complainant, he sent an agent to enquire if Ingham had any defence against the note. Ingham said the note was just and correct, and he hoped Mr. Vaden would not push on the note when due, as his cotton crop was unpromising, and he thought it likely that he would" not be able to meet it when due, but that he had no offset against the note.
At the time Vaden obtained the said note, the Morgans were pressed for money, and soon after became in failing circumstances, and finally wholly insolvent. It turns out, that they had no title to the land sold to Ingham, for part payment of which, the note in question was given; and this bill is filed to enjoin the collection of the note in the hands of Vaden.
It is insisted for the complainant, that this note was taken by the defendant Vaden, in payment of a pre-existing debt, and, *55 therefore, not in the due course of trade. Wormley vs Lowry, 1 Hum. Rep. 470: Bay vs. Coddingion, 20 John. Rep. 637. It may be doubted whether the facts of this case justify such a conclusion. Vaden had stored his cotton with the Morgans to be shipped, or held subject to his order. They had sold his cotton, and applied it to their own use, without authority. They were not his debtors; for no contract, by which a debt was created, had ever been made. He had a right of action against them, to be sure, for the money they had received to his use, but it was not a debt until he agreed to consider it such, and receive this note in payment. It may well be doubted, therefore, whether the contract may not be regarded as a sale of the cotton by Vaden to the Morgans, at the time the note was transfer-ed to him; and if so, the complainant’s equity against the Morgans could not effect the note in the hands of Vaden; for in that case he would have received it in the due course of trade.
But if it be assumed, that Vaden received this note in payment of a pre-existing debt, whereby all the equities existing against the Morgans, follow it in the hands of Vaden, yet the declaration of Ingham, after the note was received, to the agent of Vaden, must repel him from setting up his equity.
When enquiry was made of him by Vaden, he said the note was just and correct, and that he had no offset against it. In cases where a note is taken in payment of a pre-existing debt, the matter of equity against the payee of the note, when allowed against the endorsee, by way of defence, stands upon a consideration of the equities existing between the parties. The court holds, that as the endorsee parted with nothing, there is no equity in permitting him to recover money against which the defendant has a good* defence, but for the endorsement. But this very consideration of the equities between the parties, turns the case against the maker, when by his act he induces the plaintiff, to take the paper, or, which is the same thing in principle, by his declaration, causes him to rely upon it after it has been received, and thereby prevents him from seeking other indemnity. The Morgans at that time were in a condition to give such indemnity, but before the note fell due they became insolvent.
*56 To permit this defence now, would be the grossest injustice to Yaden, and would sanction in many cases that might exist, the sheerest fraud. Foster vs. Newland, 21 Wend. Rep. 94: Petrie vs. Fleeter, 21 Wend. Rep. 172: Watson’s ex’rs. vs. McLaren, 19 Wend. Rep. 563.
The decree must be reversed, the injunction dissolved, and the bill dismissed with costs.