## Case No. 6,240.

### HAWES et al. v. MARCHANT et al.

[1 Curt. 136.] [1]

Circuit Court, D. Rhode Island. June Term, 1852.

BOND OF DEBTOR—VALIDITY OF—ESTOPPEL.

1. A valid promise not to arrest a debtor on the first execution does not, at law, avoid a bond given by the debtor for the prison liberties, when arrested in violation of such promise, which is collateral merely.
[Cited in Goebel v. Stevenson, 35 Mich. 184.]

2. A statutory bond for the liberties of the prison, executed by the debtor under duress, is void both as against him and his sureties.
[Cited in U. S. v. Mynderse, Case No. 15,851; U. S. v. Humason, 8 Fed. 79; Hazard v. Griswold, 21 Fed. 182.]
[Cited in Patterson v. Gibson (Ga.) 10 S. E. 10.]

3. But if the debtor, with the knowledge and consent of one of his sureties, claims and exercises the right of being on the liberties by virtue of such a bond, they are estopped to allege its invalidity.
[Cited in Lawrence v. Dana, Case No. 8,136; Brant v. Virginia Coal & Iron Co., 93 U. S. 336.]
[Cited in Audenried v. Betteley, 5 Allen, 386; Fall River Nat. Bank v. Buffington, 97 Mass. 500; Horn v. Cole, 51 N. H. 295; Davidson v. Follett, 27 Iowa, 220; Shapley v. Abbott, 42 N. Y. 444; Zuchtmann v. Roberts, 109 Mass. 54; Moore v. Metropolitan Nat. Bank, 55 N. Y. 43.]

This is an action of debt on a bond for the prison limits. Among other pleas the defendants [Henry Marchant and others] have pleaded, that before Marchant, the debtor and principal obligor, was committed to jail on the execution of the plaintiffs, they promised that if he would deliver to them a negotiable promissory note, for the sum of five hundred dollars, indorsed by a third person, they would not have his body taken on that particular execution; and that afterwards,

and before he was committed to jail, he tendered to the plaintiffs the note agreed on, and they refused to accept the same. To this plea the plaintiffs demurred, and the demurrer having been argued, the opinion of the court was delivered by— *

CURTIS, Circuit Justice. This plea shows a promise, for a valuable consideration, not to commit the debtor to jail on this particular execution, which, according to the law of Rhode Island, was returnable at the end of six months from its teste, and upon its return unsatisfied, the creditor would be entitled to take an alias execution, to which the promise in question did not extend. In other words, the plea shows a valid promise, by the creditors, not to take the body of the debtor in execution until after the lapse of six months from the teste of the execution issuing on the judgment.

Two questions arise. The first is whether this promise operates to suspend the legal right of the creditors, so as to render its exercise a trespass, and to make the imprisonment of the debtor, on the execution, duress. And the second is, whether, if the imprisonment was thus illegal, the bond was void.

Upon the first of these questions I am of opinion that the promise of the creditors was merely a collateral engagement, which had no effect whatever upon the execution, or upon any right, or power, which by law arose from it. The case is analogous to those which have been decided upon covenants not to sue for a limited time. Such covenants are held not to affect the right, but to be collateral and independent, because, among other reasons, the damages for the breach of such covenants are not necessarily coextensive with the value of the right agreed to be suspended. The same is true here. There is no necessary connection between the damages suffered by Marchant in the exercise of the plaintiffs' right to imprison him during the six months, and the value to the plaintiffs of that right.

Moreover, the only ground on which a court of law ever holds that a collateral promise operates directly on a legal right, is to avoid circuity of action. For this reason, a covenant not to sue at any time, or in any court, may be pleaded as a bar. But no circuity of action would be avoided by allowing this promise to operate upon the right according to its terms. Marchant would still be able to sue for its violation, and recover such damages as he might show himself entitled to. Courts of law cannot, like courts of equity, compel the specific execution of these collateral promises. They can only adjudge damages, and where these are not necessarily coextensive with the value of the right enforced in violation of the promise, they must leave the parties to their separate actions in which their respective rights will be enforced, and thus, at last, complete justice will be done. It is otherwise in courts

of equity, and in those classes of cases in which courts of law exercise a summary equitable jurisdiction, as in the discharge of bail and some few other instances. But this case comes within no such equitable jurisdiction of a court of law, and the action must be tried, and judgment rendered, upon the principles of the common law, according to which, a promise to suspend, for a limited time, the exercise of a legal right, cannot be pleaded as a bar, because it does not operate upon the right itself, but is merely collateral and executory, and though valid and binding, is to be enforced like other promises, by an action founded upon it, in which damages are recoverable, corresponding with the injury sustained by the breach of the promise.

After this plea had been decided to be bad, the case went to trial upon other issues, and the facts and questions on that trial appear in the opinion of the court.

CURTIS, Circuit Justice. The obligation declared on is a statutory bond. The officer by whom, and the occasion on which, it might be taken. the obligee, the precise condition, and the damages for its breach, are all prescribed by the statute of Rhode Island entitled "An act for the relief of poor persons imprisoned for debt." Dig. 166. It is to be governed by the laws applicable to such obligations, among which is the rule, that if a public officer, authorized to take a bond, has illegally exerted his official authority, and thereby compelled the obligee to enter into an obligation not required by law, it is not binding. This rule is settled by the highest authority.

In U. S. v. Tingey, 5 Pet. [30 U. S.] 115, the defendant, who was a surety of a purser in the navy. in a joint and several bond, pleaded that the condition of the bond differed substantially from the requirement of the act of congress, and that the same was extorted from the purser and his sureties as the condition of his retaining his office. The court held the plea good. In conformity with this are a great number of decisions, some of which are U. S. v. Gordon, 7 Cranch [11 U. S.] 287; U. S. v. —— [Case No. 14,413]; U. S. v. Gordon [Id. 15,232]; U. S. v. Morgan [Id. 15,809]; Beacom v. Holmes, 13 Serg. & R. 190; Purple v. Purple, 5 Pick. 226. And the cases in which it has been held that, if the condition of a statutory bond contains stipulations which are not required by the statute, but separable from those which are required, the latter may be enforced and the former rejected, silently, at least, acknowledge the same rule, by requiring that the one should be separable from the other, and by denying all efficacy to those provisions which have been inserted without warrant of law. Among this latter class of cases are U. S. v. Bradley, 10 Pet. [35 U. S.] 343; U. S. v. Linn, 15 Pet. [40 U. S.] 315; Hall v.

Cushing, 9 Pick. 395; Van Deusen v. Hayward, 17 Wend. 67; Ring v. Gibbs, 26 Wend. 502; Shunk v. Miller, 5 Barr. [5 Pa. St.] 250. The rule which avoids such bonds rests upon the want of authority in the public officer to take them, and upon the policy of guarding the citizen against oppression by the illegal exercise of official power. It is well stated by Sewall, J., in Churchill v. Perkins, 5 Mass. 541, that where the plaintiff demands the fruit of an obligation obtained colore officii, it must be shown that the demand is justified by some authority of the office, otherwise it is against sound policy, and is void by the principles of the common law. By colore officii, however, must be understood some illegal exertion of authority, whereby an obligation is extorted which the statute does not require to be given. If all parties voluntarily consent to enter into the bond, and the departure from the precise requisitions of the statute is made by mistake, or accident, and without any design to compel the obligees to enter into an undertaking not required by law, the bond is not invalid, simply because it contains something which the statute does not authorize. U. S. v. Bradley, 10 Pet. [35 U. S.] 364; U. S. v. Linn, 15 Pet. [40 U. S.] 290. Whether it can be enforced or not, depends upon the possibility of separating the part of the condition authorized and required, from the residue of the condition, where the condition is not wholly in conformity with the law, and that is the only objection to the bond.

Such being the rules of law, upon all the facts, if shown, there can be no doubt this bond was invalid. Marchant, having given bond with sureties in the form prescribed by the statute, that bond having been accepted by the keeper of the jail, and Marchant having been thereupon permitted to go out of the close jail, and to be and remain upon the enlarged limits, and enjoy, what is established by law to be the liberty of the yard, he had a right to continue to enjoy that liberty until the expiration of thirty days, the period prescribed by the statute; and any interference with that right by the keeper of the jail was unlawful. While in the possession of this right he was induced to enter the close jail by a request of the keeper, that he would return thither for the purpose of seeing one of the sureties on the official bond of the keeper, who was not satisfied of the sufficiency of the sureties on Marchant's bond; he was there detained in close custody, and denied the liberty of the yard, except upon the condition of furnishing another bond, with sureties satisfactory to the keeper, and, as the jury have found, the bond now in suit was executed by means of the duress thus exercised upon Marchant, the principal obligor. To this case the language of the court in U. S. v. Tingey, 5 Pet. [30 U. S.] 129, is exactly applicable: "There is no pretence to say that it was a bond voluntarily given, or that, though different from the

form prescribed by statute, it was received and executed without objection. It was demanded of the party, and extorted under color of office, against the requisition of the statute." In this case the bond was extorted against the requisition of the statute, for that conferred on Marchant, after the first bond was accepted, a right to the liberty of the yard, and made his subsequent detention in close jail illegal, and required the jailer not thus to detain him; and consequently the exaction of the second bond was contrary to the statute. A very able argument has been addressed to the court to prove that the creditors, the statute obligees, who did not in any way participate in this illegal exertion of authority by the officer, ought not to be affected thereby. It is said the jailer who takes the bond is a public officer, not appointed by the creditors, not in any just sense their agent, and that they ought not to be made responsible for his acts. This must be admitted. But there is a wide difference between being responsible for the unlawful act of another, and enjoying the fruit of his unlawful act. The former the law does not impose upon any one who has not, in some way, authorized the act, or voluntarily placed himself in a position to answer for it; but neither does it allow a third party to obtain the benefit of an unlawful act, simply by showing his own innocence and freedom from responsibility. The creditor can have no right of action in this case, save through the act of the jailer in taking this bond. It is true, the appointment of the jailer was an act of the law and not of the party; but the party can have no right in this bond, save through his act as a public officer, done in the lawful exercise of the powers confided to him; and having exceeded those powers, and compelled the execution of the bond by means of such excess, his act can confer no right on any one.

The view which has been taken renders it unnecessary to consider the question whether simple duress at the common law, operating only on the principal, can be taken advantage of by the sureties. The case of Huscombe v. Standing, Cro. Jac. 187, is certainly in point, and it has often been assumed to be good law. I am not prepared to say it is not so, though it must be admitted that it may lead to strange consequences, in a case where the surety pays the bond, and comes back on the principal to indemnify him, and thus the latter is effectually held for a debt, which, according to the case in Cro. Jac., does not appear to have been justly due, and which he was forced, by duress, to render himself liable for to the surety, who, at his request, enters into the obligation. But it is not necessary for me either to adopt or reject that decision. That was not a statutory bond, and the defence was only duress at the common law. Here the defence is as available to the surety as the principal, for it was by an illegal exercise of official authority that

their signatures were taken and obtained. So it was held in U. S. v. Tingey [supra], which was an action against a surety, and the same is true of Churchill v. Perkins [supra], and Beacom v. Holmes [supra]. See, also, Thompson v. Lockwood, 15 Johns. 256. But though upon the facts above referred to, this bond must be deemed to have been invalid, it remains to consider whether this defence is open to all these defendants. It appears that after the second bond was given, Burgess, one of the sureties on both bonds, called on the attorney of the execution creditors, and inquired if he was satisfied with the sureties on the second bond, and being informed that he was, said he would surrender Marchant on the first bond; he also said if the attorney was not satisfied with the second bond he would surrender Marchant on that. Soon after, he went to the jail, accompanied by Marchant, and surrendered him to the deputy-keeper, the jailer not being present. He was asked on which bond he wished to surrender him, and replied on the first bond. The deputy made the proper entry on the records, and thereupon Marchant and Burgess left the jail. It was admitted, at the argument, that, for some days after this, Marchant continued on the limits; but, being advised that the second bond was void, he left them, and has since been at large. The statute of Rhode Island grants to a debtor, imprisoned on execution, the privilege of the enlarged limits of the prison, "such prisoner first leaving with such sheriff, or keeper of the jail, a bond to the creditor, with two or more sufficient sureties," &c. When, therefore, Marchant, after his surrender upon the first bond, left the close jail, and went upon the enlarged limits, he claimed and exercised a privilege which could rest only upon the previous execution of a valid bond, pursuant to the statute; for the existence of such a bond was a condition precedent to the existence and enjoyment of that privilege.

Further; it was the duty of the jailer and his deputy not to allow a debtor on execution, who had not given such a bond, to go upon the limits, and the violation of this duty renders the jailer liable to the creditor for an escape. When Marchant was permitted, by the deputy-jailer, to leave the close jail, he suffered him to do that which was lawful, only if the remaining bond was valid, and he subjected his principal to pay the debt, if a valid bond, conformable to the statute, was not then left with the jailer. The question is, whether Marchant is estopped to deny the validity of the bond he left with the jailer. The law of estoppel by acts in pais has been greatly extended in modern times. Its operation is so just, that it commends itself to every fair mind; and it is sufficiently exact, certain, and safe, when kept within the limits of the principles upon which it depends. Those principles require that, to constitute such an estoppel, a party must have, designedly, made an admission inconsistent with the defence or claim which he proposes to set up, and that another party has, with his knowledge and consent, so acted on that admission, that he will be injured by allowing the admission to be disproved; and this injury must be coextensive with the estoppel.

The first inquiry, therefore, is whether Marchant has made an admission inconsistent with the defence he now proposes to set up. It is clear that he has; for he has claimed, and proceeded to exercise a privilege, which he had, a right to exercise if he had given a valid bond, but which it was unlawful for him to exercise if he had not; this privilege he claimed of, and received from, a public officer, whose duty was violated by the grant of the privilege if a valid bond was not left with the officer, but who was obliged to grant it if a valid bond was left. His claim, therefore, was equivalent to an express affirmation that such a bond was left; for the officer was not called on to believe that he meant to commit an escape, or that he was doing any thing unlawful. The officer was warranted in the belief, and undoubtedly did believe, that what he was about to do was in the exercise of a legal right, founded on the existence of this bond, left with the jailer in compliance with the law; and this belief, being justly produced in his mind by the act of Marchant, it is the same as if a direct and positive affirmation had been made, in terms, by Marchant to the deputy-jailer, that he had executed a sufficient bond, according to law, to entitle himself to the liberty of the yard. It is clear, also, that after the deputy-jailer had acted on this belief, it must operate to the injury of his principal and himself to allow Marchant to show that the bond was invalid. Indeed, the alternative is whether Marchant should be held liable on this bond, the damages for the breach of which are the judgment, debt, and interest; or whether the jailer shall be liable for the same debt, so that, if the estoppel exists, it is no more than coextensive with the injury which would be suffered by allowing the defence to prevail. I have no doubt, also, that there is sufficient privity between the officer who takes the bond, and the creditors for whom it is taken, to have the estoppel enure to the benefit of the latter. It has already been held, that though the officer is not properly an agent of the creditors, yet their title depends upon the validity of his acts, and that if he so conducted, that the bond was invalid as between him and the debtor, it was also invalid as between the debtor and the creditor; and it is but an application of the same principle to hold, that if the bond has subsequently been made valid as between the officer and the debtor, the latter cannot make a defence to the bond; and it may be added that, to compel the officer to pay the debt by making a defence to the bond, would operate as a fraud on him, which is the basis of these estoppels in pais.

It remains to consider whether either of the

sureties is bound by this estoppel, and I am of opinion that Burgess is thus bound. The deputy-jailer was present when Burgess inquired of the attorney of the creditors if he was satisfied with the sureties on the second bond; when he informed the attorney, that if he was not thus satisfied, he would surrender Marchant on the second bond; when he was informed by the attorney he was satisfied with the sureties on the second bond, and when Burgess said he should surrender the debtor on the first bond. Soon after this he did surrender him, to this officer, in the absence of the jailer, and he stood by, and saw Marchant leave the jail, and gave no notice that the act, which the deputy-jailer had a right to believe was done upon his responsibility as one of the sureties on the second bond, was not so done. I have no doubt he then considered himself responsible. He had just before spoken, in the presence of the deputy-jailer, of surrendering Marchant on the second bond; he could scarcely have intended to surrender him on a void bond; and the deputy-jailer might fairly have understood, from what he there said, that there were two valid bonds, upon one or the other of which he intended to surrender the debtor, probably to put an end to this double liability, according as the attorney was satisfied with the one or the other; and when he did in fact surrender him on the first, and stood by, and, without informing the deputy-jailer that he considered the second bond invalid, saw Marchant claim and take, and the deputy-jailer concede, a privilege which rested upon the validity of the second bond, I am of opinion he became estopped from denying its sufficiency. He was silent when he should have spoken; and he cannot now speak. It might be otherwise, if this surety had not been upon both bonds, and had not had notice of the facts which rendered the second bond invalid; though in Petrie v. Feeter, 21 Wend. 172, a surety was held to be estopped by his representation to a person about to purchase a bond, from showing a payment made by the principal obligor. It is not necessary to go so far in this case, though I do not wish to be understood as questioning the correctness of that decision.

As to the remaining surety, I perceive no reason why he should be estopped; and the result is that under the agreement of the parties a verdict must be entered that the writing obligatory declared on, is the deed of Marchant and Burgess, and is not the deed of the remaining surety. And if, upon this verdict, the plaintiffs shall move to discontinue against the second surety and for judgment against the others, as they have given notice, I shall allow the motion upon the authority of Minor v. Mechanics' Bank, 1 Pet. [26 U. S.] 46; Amis v. Smith, 16 Pet. [41 U. S.] 303; U. S. v. Linn, 1 How. [42 U. S.] 104; and a case decided at the last term of the supreme court. Coffee v. Planters' Bank, 13 How. [54 U. S.] 183.