The opinion of the Court was delivered by
Wardlaw, Ch.
We concur in the reasoning of the Chancellor on the topics he has discussed, and in his conclusion. ■Usually where a decree can be safely rested upon particular grounds, it is advisable to avoid debate of other questions which may be more disputable; and ■ such was the approved course pursued in this circuit decree. It has been strongly urged in the argument in this Court, that the plaintiff, who is resident in a foreign jurisdiction, forbore to intervene as a party in Matthews vs. Colburn, and to present a defence on his part distinct from that of the nominal defendant, from his mistake that his agent here was acting as his counsel; and that considerations affecting the character of counsel and the administration of jus - tice in the State, invoke full and indulgent review of the plaintiff’s claim. We yield to this appeal so far as to add something in corroboration'of the decree, without meaning to disparage the sufficiency of the Chancellor’s views. Certainly Mr. DeSaussure, on being examined as a witness in this case, disclaimed having been plaintiff’s counsel in the previous proceedings; and it may be conceded argumentatively, (although we conclude nothing judicially on this point,) that the correspondence between him and the plaintiff may have misled the plaintiff into the belief that Mr, D. was acting as his counsel.' ■
Did this mistake, if it existed,, affect injuriously any peculiar *297 claim or equity of the plaintiff which might have been pleaded in the suit in this Court of Matthews vs. Colburn ? Before argument on this question, it is fit to re-state some of the facts.
November 20, 1841, William Matthews executed five bonds to James S. Colburn, each conditioned for the payment of $2,400, and interest from the date annually, respectively on November 20, of the years from 1842 to 1846, inclusive. On the same day, by a separate instrument under seal, after briefly describing the bonds, he made this statement: “ I do hereby acknowledge that the aforesaid five bonds or obligations are given by me to James S. Colburn for valuable consideration, and that I have no offsets or discounts against the same.” April 25, 1842, plaintiff wrote a letter to Mr. DeSaussure, enclosing two promissory notes made by J. S. Colburn to himself, dated October 1, 1836, each for $2,500, with interest from date, at the rate of six per cent, per annum\ payable quarterly, one due October 1, 1842, and the other October 1, 1844; stating that it had been agreed between Mr. Colburn and himself to exchange these notes for the two of said bonds of Mr. Matthews, payable in 1845 and 1846, with annual interest of seven per cent., waiving the difference of principal and interest, if Mr. D.’s opinion should concur with Mr. Colburn’s, that Mr. Matthews’ responsibility was unquestionable ; further stating, that it was through Mr. Colburn’s suggestion that the writer had solicited Mr. DeSaussure’s aid in accomplishing the exchange ; and authorising Mr. D. to complete the arrangement and hold the bonds subject to plaintiff’s order. In his reply, under date of May 10, 1842, Mr. D. expressed a confident opinion of the pecuniary responsibility of Mr. Matthews; informed plaintiff that the exchange of securities had been consummated; and added : “ Mr. Matthews has given a written certificate that the said'bonds are bona fide due, and that he has no offsets thereto.” It is probable that Mr. D. gave this version of the certificate from memory, without having the paper before him; for he does not pursue the precise terms, nor perhaps the legal effect of the certificate. He testifies in this cause, that he surrendered the notes and accepted the bonds *298 on the faith of this certificate ; and of course the fact is unquestionable. Yet it is also true, that before the exchange, he held as the counsel of J. S. Colburn, all the five bonds assigned in blank by the obligee; and that at the time of the exchange, he did no more concerning the bonds than to endorse the letter H, on the two payable in 1845 and 1846, as a mark that they were to be held subject to plaintiff’s order. He retained the five bonds in his possession until the suit in Equity of Matthews vs. Colburn was decided on circuit; producing them as they were needed for evidence in the course of litigation in both Courts, and re-taking them when they had been used for this purpose.
It thus appears, that plaintiff originally agreed with Mr. Col-burn, without reference to the certificate now treated as so potent, to accept in discharge of the debt of the latter to him an assignment of two of the bonds specified by date; if his agent, appointed on suggestion of his debtor, should be satisfied of the responsibility of the obligor. By the use of this term responsibility in his letter, I suppose from the context the plaintiff intended the sufficiency of the obligor’s estate for his debts, and perhaps his punctuality in discharging them; and this is manifestly the construction adopted by his correspondent. At most, the phrase cannot be extended in meaning beyond the legal liability of the obligor on the bonds. So much of the certificate of the obligor as acknowledges that the bonds are given to the obligee on a valuable consideration, simply expresses what is the implication from the seals, and does not increase the force or validity of the obligations. That portion of the certificate which acknowledges that the obligor has no offsets or discounts against the bonds, might preclude him, under certain circumstances, from availing himself of a pre-existing credit or counter claim, but adds nothing to his obligation on the specialties themselves. Offsets and discounts are legal terms of familiar and identical import, and applicable to the bonds as legal instruments. If these terms had been incorporated in the bonds themselves, they would have been equivalent to a phrase often introduced into bonds “ without defalcation,” and they cannot *299 have a more extensive interpretation when employed in a separate instrument. The certificate can mean no more in favor of an assignee than of the obligee to whom it was delivered. This Court would relieve against a purpose to cheat by the employment of equivocal or legal terms, as against any other intentional fraud; but no such fraudulent purpose is imputed here. It is 7'es judicata between the obligor and obligee, that the certificate does not exclude the obligor from defeating the collection of the bonds on the ground of mistake as to the liability of his son-in-law to the obligee, (to compromise which liability was the consideration of the bonds,) — a mistake arising from his ignorance of the secret partnership of the obligee in the firm of P. B. Colburn & Co. And we perceive no sound principle which entitles the plaintiff to different construction of the instrument or different measure of redress. The certificate was cotemporaneous with the bonds — it was faithful according to the state of Mr. Matthew’s knowledge at the time — it was delivered to the obligee and for his use, without expressing any special purpose — it was not founded on any consideration additional to that of the bonds, proceeding from the obligee, the subsequent assignee or other person — it was not the original inducement to the plaintiff’s agreement to accept assignment of the bonds, although influencing his agent in completing the agreement. Moreover the assignment was not purchased by money advanced, but was accepted in discharge of a precedent debt of the obligee; no notice of the assignment was given to the obli-gor, and the assignee, informed of the progress of litigation in both Courts for seven years, suffered the obligee to be dealt with as real as well as ostensible proprietor. Under these circumstances, we regard the assignee as standing in no better position than the obligee; and that if his case, so far as it is distinct from that of the nominal defendant there, had been formally presented in Matthews vs. Colburn, no different result in his behalf would have been attained.
The honest assignee of a bond is liable to be defeated of satisfaction by proof of fraud, mistake, or want of consideration *300 affecting the obligation. If, however, the obligor, from fraud, negligence or folly, represent himself to be liable on the bond to one about to deal for assignment, (and perhaps the consequence may be the same as to any substituted purchaser who acts on the faith of the representation); or even if the obligor, with full knowledge of his defence, acquiesces in an assignment without disclosure of his defence; such representation or concealment will amount to an estoppel in pais upon the obligor from setting up his defence. It is indispensable to such estoppel, that the obligor should induce, promote or encourage the assignment, and that the assignment should be accepted in consequence of his representation or concealment. The general rule is that the assignee occupies no better position than the obligee; and the exception proceeds on the principle that the conduct of the obligor creates a new and independent contract between him and the assignee.
This (and no more) is-the doctrine of the cases cited by the appellant. McMillan vs. Warner, 16 Serg. & R. 21; Carnes vs. Field, 2 Yeates, 543 ; Ludwick vs. Croll, Ib. 465; Davis vs. Barr, 9 Serg. & R. 141 ; Davison vs. Franklin, 1 Barn. &. Ad. 142; Petrie vs. Feteer, 21 Wend. 172; 1 Penna. 478; 1 Washb. 296, 389. No case, however, has been cited, and I suppose none exists, deciding that where there is no fraudulent design, a vague assurance of a bond by the obligor at the time of execution, made to the obligee and for his use, without manifest purpose of promoting assignment, creates a new contract between the obligor and the assignee.. Such is the present instance. The agent of the plaintiff took the assignment with some reliance on the certificate; but he. was not -instructed to look to such certificate, and he had no communication with the obligor at the time or afterwards concerning the assignment. We are not satisfied that plaintiff has any equity to disturb the decree in Matthews vs. Colburn.
The Chancellor concluded upon the evidence that Mr. Matthews was ignorant of the covenant of J. S. Colburn to William Matthews; and upon review of the proof, we approve his conclu *301 sion. This instrument is important only in the question of notice of the assignment. Conceding the covenant was delivered to Mr. Matthews, it furnishes no intrinsic evidence of notice to him of an assignment which was made nearly six months after-wards, and which is not intimated therein as projected. To the concession that Mr. M. accepted this covenant, must be added the assumption that he surrendered it to the covenantor when the bonds were assigned to plaintiff, before the covenant has any significance in the cause. But this assumption is not supported by any express proof, is contrary to the answer of B. P. Colburn and to the probabilities of the case, and is hardly consistent with the testimony of Mr. Memminger and Mr. De-Saussure. It would be easy to conjecture motives in B. P. Col-burn for desiring the execution of this covenant, and for not communicating it to the nominal covenantee ; and it must be borne in mind, that all the arrangements of compromise between J. S. Colburn and B. P. Colburn were conducted by their counsel, and that Mr. Matthews, having no counsel, intervened only to give his bonds for the balance adjusted against his son-in-law. It is remarkable that the bonds, the certificate, the covenant, all bearing the same date, and the undated but probably cotemporaneous assignment in blank, are severally attested by different witnesses.
The bill in this case contained no prayer for relief against J. S. Colburn, who was made a party, and it was not intended in the circuit decree, nor is it now intended, to conclude the plaintiff, except on his case against the estate of Matthews.
It is ordered and decreed, 'that the circuit decree be affirmed, and the appeal be dismissed.
JohNstoN and Dunkin, CO., concurred.
DargaN, Ch., absent at the hearing.

Appeal dismissed.