By the Court—Bosworth, Ch. J.
The plaintiffs, as assignees of William Pearson, bring this action to recover moneys alleged to be due from the defendant to Pearson for grading and paving parts of certain streets in Brooklyn under two several contracts, one for grading and the other for paving.
The plaintiffs recovered a verdict for the-amount claimed under the paving contract, and only that, on a trial of the action had before Mr. Justice Hoffmau and a jury, on the 15th of December, 1857. The Judge, at the trial, directed the questions of law presented by the case to be first heard at the General Term, and the entry of judgment to be suspended in the meantime.
The verdict for all the purposes of the present proceeding determines all questions of fact in favor of the defendant, except those affecting the contract called the paving contract. The verdict -rendered is for the amount due on that contract, and was rendered for work done by Pearson un der it.
The “paving contract” was made in the winter of 1854, but not in writing. Subsequently, and on the 20th of April, 1854, a written contract for grading was made between Pearson and Bushnell, which is spoken of in the proceedings and testimony as the grading contract.
By the paving contract, as modified by Pearson and Bushnell after it was made, Pearson contracted to purchase of Bushnell certain lots specified, and to do certain paving for which Bushnell was to pay one-half cash, and the other half was to be applied as payment, pro tanto, by Pearson, on account of the lots which he so agreed to purchase.
Bushnell has paid the one-half cash and something more, and has at all times been ready to apply the unpaid residue, as payment toward said lots, and convey them to Pearson, or to the plaintiffs as his assignees, on receiving a- bond *11 and mortgage for the balance of the purchase money, which would remain unpaid after making such application.
The position of Bushnell is, and the jury have, in effect, specially found, that it was agreed between Pearson and Bushnell that the paving contract was to be so far given up that Pearson was to do no more work under it, and Bushnell was to be at liberty to contract with some other person to do the unfinished work, and Pearson was to be paid for what he had then done in the manner stipulated in the paving contract.
The written notice of February 7, 1856, from the plaintiffs to Bushnell, that they had “become the owners” of the paving contract, and requiring payment of the balance due from Bushnell under it, states the contract and the then rights and liabilities of the parties to it, and of the plaintiffs as assignees of Pearson, as Bushnell claims they actually existed, demands a conveyance of the lots to the plaintiffs as the stipulated mode of paying such balance, and offers to give their bond and mortgage for the difference between such balance and the contract price to be paid for the lots.
Shortly after the 7th of February, Mr. Robert G. Pike (one of the law firm of Pike & Galpin), in behalf of the plaintiffs, called on Mr. Bushnell “and learned for the first time (as he says) that there was a modification of the paving contract, in this respect, that Mr. Pearson had been released from performing the work, hut not from talcing the deed.”
This information he communicated to the plaintiffs and to Pearson.
Pearson insisting there was a rescission in writing, Mr. Pike again saw Bushnell and told him what Pearson said, and Bushnell “denied it.”
Pike requested Bushnell to look at his papers; Bushnell did so, and took from his safe a bundle of papers, and the top paper being indorsed “a contract between Bushnell and Pearson,” and Bushnell, forgetting at the time that there were two written contracts between him, and Pearson, *12 and supposing it to be the paving contract, handed it to Mr. Pike to look at. It was, in truth, the grading and not the paving contract. Beither of them then read the contract itself. There was a writing at the foot of it, signed by Pearson only, declaring it to be canceled, given-up and put an end to for the sum of $100, acknowledged by the writing itself, to be paid. Messrs. Pike and Bushnell, supposing the contract to be the paving contract; Bnshnell “maintained that the cancellation and agreement was, in substance, what he had before told” Mr. Pike. A copy of this writing was sent to Pike at his request, a day or two before the 20th of March, 1856.
On the 20th of March, Messrs. Pike and G-alpin wrote to the defendant their views of the meaning and effect of this writing.
The defendant replied by letter, of April 2, 1856 (still supposing that the writing was on the paving contract), in which he insisted the facts to be that the contract was not -put an end to; that the whole intent of the writing was “simply intended to put an end to his work” and enable the defendant to contract it to others, and averred his readiness to carry out the contract according to the facts and merits.
On the 3d of April, 1856, Messrs. Pike and Galpin made a reply to this letter, stating their views of the effect of the contract and of the writing supposed to be at the foot of it.
To this Mr. Bnshnell responded by letter, of April 12, 1854, and stated that the writing was hastily made and was never intended to vary the contract, except to enable' Bushneil to get some one to do .the work, and that “what (Pearson) had done was to be settled for by the contract.”
In this letter Mr. Bnshnell also insists that Pearson knows this to be the truth of the matter, and that the plaintiffs did when they purchased the contract. He says: “The omission by me of one word in making that indorsement on the contract is now sought to be used against me contrary to the understanding of all—everybody, until *13 now,” * * “The attempt is one to escape from the contract on Messrs. Youngs’ part, not on mine, and against, as anybody can see, all the true facts and morality of the matter.”
In this state of things the original assignment of the contract by Pearson to the plaintiffs was destroyed, and on the 30th of April, 1856, a new assignment of it was executed, and the plaintiffs, at the same time, discharged Pearson from his indebtedness to them ($1,500 in amount) and paid him $700, viz., $100 cash and their note or notes on time for $600.
It is quite evident that when the paving contract was first transferred to the plaintiffs, the transfer was taken with notice to them, and with the belief on their part, that anything due upon it was payable in land. And that whatever may be the meaning and effect of the writing, exhibited to Mr. R. G-. Pike, Mr. Bushnell at all times insisted that the actual agreement made, on releasing Pearson from, doing more work under it, was that Pearson should be paid in land for what he had done, and that any effort on the part of the plaintiffs to compel the defendant to make payment in any other manner was an attempt on their part to escape from the contract against “all the true facts and morality of the matter.”
On the 12th of May, 1856, this action was commenced. Mr. Bushnell, on the 24th of May, after having examined his papers with more care, discovered that the contract which he had exhibited to Mr. Pike was the grading and not the paving contract, and on that day addressed to Messrs. Pike and Galpin a letter stating that to be the fact, and tendering to them permission to examine the papers.
The practical question now presented to us is simply this: “Is Mr. Bushnell estopped from proving the facts to be as he, at all times, strenuously asserted them to be?” Is he precluded, by the act of handing the grading contract to Mr. Pike, as being the paving contract, from showing it was not the paving contract?
*14 The Judge charged the jury: “If you come to the conclusion that the plaintiffs discharged their debt and made the advances in consequence of this information got from Mr. Bushnell, whether by his mistake or not, the plaintiffs are entitled to recover for the amount due on the paving contract.” To this the defendant excepted.
In Cowen and Hill’s and Edwards’ Notes, vol. 1, pp. 454, 455, on a review of the cases adjudging certain admissions to be operative as estoppels in pais, this conclusion is expressed. “ They are said in this case, (8 Wend., 483,) so to operate where they are designed to influence the conduct of another, and have that effect, and when a denial will injure the latter. In another case the rule is put broader, that the party shall be estopped, where his intent was to influence the other, or derive a credit or advantage to himself. (Tufts v. Hayes, 5 N. H. R., 452 ; Kingsley v. Vernon, 4 Sand., 361 ; 21 Wend., 172.) But where he has not acted with this view, and there is no breach of faith in receding, he shall not be concluded. (Id.) The cases will, we imagine, be found to satisfy these rules in then broadest construction.”
Petrie v. Feeter, (21 Wend., 172,) was brought to recover back part of the amount of a note signed by the plaintiff, John D. Petrie, with and as surety for Adam Petrie, which the plaintiff had paid to the present defendant Eeeter. Eeeter being offered the note after it was due, declined to purchase it, unless the plaintiff consented. After this, the plaintiff “ called on the defendant, and told him that he was willing he should purchase the note; that he was as willing to pay the money to him as any other; that he had signed the note and was holden to pay it.” Upon this the defendant bought it, paying $218 cash, and passing the residue to his vendor’s credit. On the 18th of October, 1831, Petrie gave his note to the defendant for $250, payable at bank; paid it when'due, and afterwards brought suit to recover back the money, on the grounds that his principal had in fact paid the original note, viz.: $385.50, July 7, 1829; $101.99, Jan. 20, 1832,. and the balance May 1,1832.
*15 In that case, the admissions and representations, were made to induce the defendant to purchase the note; and the plaintiff assured Feeter that he was holden to pay it, and was as willing to pay the money to him as to any other man.
And although Petrie made the representations in ignorance of the existence of facts, discharging his liability, in part at least, yet to admit proof of them would operate as a fraud on Feeter, and be permitting Petrie to prove facts, in direct contradiction of what he had stated to be the truth of the matter.
In Dezell v. Odell, (3 Hill, 215,) the defendant, on a levy being made by the plaintiff, a constable, of an execution against third persons, signed a receipt acknowledging the receipt of the property from the plaintiff as a constable, and agreeing to deliver it to him on a day, and at a place named. He refused to so deliver it, was sued in trover, and attempted to defend the action, on the ground that the property was his own.
Cowen, J.,
who delivered the prevailing opinion, says: “We have then a clear case of an admission by the defendant, intended to influence the conduct of the man with whom he was dealing, and actually leading him into a line of conduct which must be prejudicial to his interests, unless the defendant be cut off from the power of retraction. This I understand to be the very definition of an estoppel ingais.” (Id., 219.)
“It is not enough for him afterwards to show that he had the title. If he can show in addition, that he was drawn into the admission of an adverse title by fraud, or perhaps by some gross mistake of fact, he may be able to defend himself. * * The defendant below offered no proof of the kind; but on the contrary, it is entirely apparent that the title he proposed to set up at the trial, was known to him at the time of the levy and receipt.” (Id., 219, 220.)
Bronson, J., said:
“Beforethe party is concluded, itmust appear, 1st, that he has made an admission which is clearly inconsistent with the evidence he proposes to give, *16 or the title or claim which he proposes to set up.; 2d, that the other party has acted on the admission; 3d, that the other party will be injured by allowing the truth of the admission to be disproved.”
In that connection he quotes the observation of Mr. Justice Eelsoe" in the Welland Canal Company v. Hathaway, (8 Wend., 483,) as a correct statement of the rule, viz.: “As a general rule, a party will be concluded from denying his.own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, when such denial will operate to the injury of the latter.” (Dezell v. Odell, 3 Hill, 222.)
He reviews the leading cases, and reaches the result, that “ the conduct or admission which concludes a party, must be plainly inconsistent and irreconcilable with the right which he afterwards sets up.”
Every estoppel, because it concludeth a man to allege ■the truth, must be certain to every intent, and not to be taken by argument or inference. (Co. Litt., 352, b.) “If the .act "can be referred to an honest and proper motive, the party will not be concluded, although, upon one construction, his conduct maybe inconsistent with the right which he afterwards sets up.” (Hearne v. Rogers, 9 Barn. & Cres., 577.)
In Kingsley v. Vernon, (4 Sand. S. C. R., 361,) the defendant, the indorser of a bilí, on receiving notice of protest, •“.sent, his clerk to the plaintiff, for the purpose of paying the bill, and the plaintiff informed the clerk that the bank had passed the bill to his credit, and he supposed it was paid, and at the same time showed him the bank book, with the note so credited.” This was about the 1st of August, 1848. The plaintiff had no notice that it was not paid until the 20th of September. The proof was, that it .could have been collected of the drawer, up to the 23d of August, 1848, when he failed, and since had been insolvent.
The court in its opinion, quote with approbation, Pickard v. Sears, (6 Ad. & Ellis, 469 ;) Freeman v. Cooke, (2 *17 Exch. R., 654,) and the rule stated by Bronson, J., to Dezell v. Odell, (3 Hill, 219.)
The Court say: “The plaintiff knowing that the defendant had cometo pay the bill, informed him that it had been paid. He was bound to know that this statement would induce the defendant to omit taking any measures to collect the bill of the drawer.”
Applying the rules stated in these and other cases, we ma3r observe, first, that nothing was said or done by Mr. Bushnell with a view to induce the plaintiff to purchase the paving contract, or under circumstances which could have induced a suspicion on his part, that they would be thereby thus influenced. On the contrary; before any conversations were had between him and Mr. Pike, the plaintiffs had notified him, to writing, that they were the owners of the contract, and, in the notice itself, required him to convey the lots, and offered to give their bond and mortgage for so much of the price as would be unpaid, after being credited with the sum for which they have since recovered the verdict, which the defendant now seeks to set aside. The defendant could not therefore have conjectured any purpose of the plaintiffs, to change then* position to Pearson to respect to that contract.
Second. It is uncontradicted that Bushnell, at all times, and to all his conversations and letters, insisted that by the agreement as actually made, Pearson was to receive land to payment of the work done; that the only change made in the paving contract, was, that Pearson was to do no more work under it, and was to be paid for what he had done, as was stipulated in it.
The defendant does not now seek to prove anything in contradiction to this-; but on the contrary, he onty asks to prove the fact to be as he said it was, and to be permitted to pay, as in that state of things it would be his right and duty to pay.
The only admission, either express or implied, which he made, that he seeks to contradict or explain, is the alleged *18 admission, that the contract exhibited to Mr. Pike was the paving contract.
He undoubtedly exhibited it, supposing it to be the paving contract. He and Mr. Pike both seem to have been too much engrossed with construing the- meaning of the writing at its foot, to inspect the contract itself, which would have disclosed as readily to the one as to the other, that it was the grading and not the paving contract. But while Mr. Pike insisted that by its meaning or legal effect, Bushnell was bound to pay in cash, the balance in arrear, Bushnell insisted to the contrary, and asserted that if that was its meaning or legal effect, then it was in conflict with the agreement actually made, as understood by both himself and Pearson.
In this view, there is no bad faith in receding from the admission, that this writing was at the foot of the paving contract, as Bushnell insisted that he had never agreed to any modification of that contract, except upon the terms that Pearson should receive payment in land.
The case, therefore, seems to be one in which the plaintiffs voluntarily changed their position with Pearson in respect to the paving contract, with a view to try the experiment of attempting to hold Bushnell to a liability which he declared he had never incurred, and if they succeed in it, it will not be for the reason that they have acted, relying on the facts being as Bushnell said' they in honesty and truth were; but for the reason that he is precluded from showing them to be as he said they were, and precluded because he exhibited the paper he handed to Mr. Pike, as being the paving contract.
It cannot be so held, without violating some of the essentials of the rule, allowing admissions to operate as an estoppel in pais. 1st. ¡Nothing was said by Bushnell to induce the plaintiffs to purchase the contract, for they had already notified him that they owned it. 2d. Proving what he offers to prove, is proving nothing in contradiction to what he asserted to be tiue. And 3d, he acted in entire *19 good faith, and the mistake under which he labored, when he .exhibited the grading contract to Mr. Pike, was one which the latter had the means of ascertaining at the time. The mistake was a great one, but the act can be referred to an honest and proper motive, and was of a character, and accompanied by declarations, which will prevent him from being concluded from giving proof, that the actual facts were as he asserted them to be.
. To hold the defendant estopped, is to make out an estoppel by argument and inference, which is not allowed. (Callow v. Jenkinson, 5 Eng. L. and Eq., 533.)
In Howard v. Hudson, (2 Ellis & Black., 1,) Lord Campbell, Ch. J., says: “How I accede to the rule laid down in Pickard v. Sears, and in Freeman v. Cooke.”
“ The party setting up such a bar to the reception of the truth, (viz., a representation by the defendant to the plaintiff,) must show, both that there was a willful intent to make him act on the faith of the representation, and that he did so act.”