JAMES GRAHAM AND ANOTHER *v.* JOHN FITZGERALD.

Estoppels are created between parties to a transaction from their failure to speak when good faith requires they should do so, or by giving misinformation as to matters which, from the nature of the transaction, tends to influence the conduct of the party with whom they are dealing. But third parties in some way connected with the subject of such dealings cannot be affected in their rights therein, unless apprised of the character of the intended action, of the materiality of the information sought, and unless they designedly give such misinformation as is acted upon to the prejudice of the inquirer.

A quantity of rice, in possession of defendant, who had a lien on it for the money due him for cleaning it, was bought by plaintiffs, who informed him of their purchase, and he allowed them to take away a portion of the rice, but did not inform them of his lien. Afterwards, plaintiffs having paid in full for the rice, the seller failed, and defendant refused to deliver the balance of the rice without payment of his charge for cleaning. *Held*, that he was not estopped from enforcing his lien by his failure to give notice of it to plaintiffs, since his possession of it was constructive notice of whatever rights he had in regard to the property, and that he was under no obligation to give actual notice to the purchasers.

Possession of property constitutes notice to every one of the title of the possessor.

APPEAL by defendant from a judgment of this court entered on a verdict at trial term.

Replevin for 91 bags of rice, which defendant claimed to hold by virtue of a lien for cleaning a cargo of rice, of which said 91 bags formed a part.

On September 13th, 1867, plaintiffs, through O'Shaughnessy, their broker, purchased of one Hubbell 301 bags of rice (of which the quantity in question formed a part), which were in the possession of defendant, a cleaner of rice.

Plaintiffs paid Hubbell for it in full, and took away part of it. Afterwards, Hubbell failed, and defendant then refused to deliver the remaining 91 bags, and gave plaintiffs notice of his lien.

The facts in the case which plaintiffs claimed estopped defendant from enforcing his lien against them, and also the material portions of the judge's charge, are stated in the opinion.

*Brown & Calvin,* for appellant.

I. When the plaintiffs purchased the rice, knowing it to be in defendant's possession, they took it with notice of defendant's rights, for its being in a cleaning mill, put them upon inquiry as to the nature of defendant's rights (*Sahler* v. *Signer*, 44 Barb. 606; *Bragg* v. *Boston, &c. R. R. Co.* 9 Allen, 54).

II. The defendant neither did nor said anything to estop him from insisting upon his lien as against the plaintiffs. It does not appear that he has done or omitted to do anything inconsistent with his present claim of lien, or that the plaintiffs have acted upon such doing or omission, or that the plaintiffs will be injured by allowing the facts alleged to be disproved, nor has the defendant stood by and voluntarily permitted Hubbell to sell the property as his, unincumbered, which are essential ingredients in estoppel (*Lawrence* v. *Brown*, 5 N. Y. 401; *Plumb* v. *Cattaraugus, &c. Ins. Co.* 18 Id. 392; *Manf's. and Traders' Bank* v. *Hazard*, 30 Id. 226). Admissions which come after the act do not go back and make an estoppel by relation (*Pike* v. *Acker*, Hill & Denio, 90). The farthest the court has gone upon this subject is to hold in *Brewster* v. *Baker* (16 Barb. 613), that where the owner of property is informed of its sale *on credit*, and permits the purchaser to pay therefor without giving him notice of his title, he is estopped; but in that case the real owner *received a part of the purchase price*. In this case, the defendant had no notice that the purchase was on credit, but was only informed plaintiffs *had purchased*, a thing *accomplished*, and the defendant had the right to assume it was purchased subject to his lien.

*Edgar S. Van Winkle,* for respondents, contended that there was no error in the judge's charge, and cited *Dezell* v. *Odell* (3 Hill, 221); *Carpenter* v. *Stilwell* (12 Barb. 135); *Cremin* v. *Byrnes* (4 E. D. Smith, 758); *Watson's Executors* v. *McLaren* (19 Wend. 557, 563); *Hibbard* v. *Stewart* (1 Hilt. 207).

By the Court.*—Robinson, J.—At the time of the purchase

---

* Present, Daly, Ch. J., Robinson and Larremore, JJ.

by plaintiffs from Hubbell of the 301 bags of rice, of which the 91, the title to which is in question, constituted a part, they were in possession of the defendant, and were a portion of a cargo of rice delivered him by Hubbell, for the purpose of being cleaned, and were subject to his lien thereon for $1,553 50, a balance due for cleaning the whole quantity.

The plaintiffs made the purchase September 13th, 1867, through Mr. O'Shaughnessy, a broker, for the aggregate price of $5,950 34, of which they paid $4,000 October 3d, and the balance about October 15th.

There was testimony to show that a Mr. Sorley, a clerk of O'Shaughnessy, informed defendant of plaintiffs' purchase, and that he (O'Shaughnessy) was going " to deliver it or take charge of it, or take charge of the delivery of it," and resell any of it " for them " if the broker could do so.

Mr. Sorley testified that two or three days after the sale he informed defendant of the purchase, and went by *direction of Hubbell* to see defendant, to find out about the insurance, so that it covered plaintiffs.

He also testified: " I gave the defendant notice of plaintiffs' purchase, a day or two after the purchase. I said to him, ' Messrs. James Graham & Co., of Philadelphia, have bought the balance of Hubbell's rice in your mill.' That is the substance. I don't know that he said anything."

He further testified he had *no notice of defendant's lien* until in November, some time after he had communicated the fact of the purchase.

Defendant testified he not only notified Mr. Sorley, the clerk of the broker, but O'Shaughnessy, the broker, himself, about a month before Hubbell failed, and before they had paid for the rice, not to pay for the rice; that he had a lien upon it; but in this he is also contradicted by O'Shaughnessy, who also testified he had never heard of any claim of defendant until after the sale, and about a month after Hubbell's failure, when notice was given by defendant in writing.

The evidence warranted the jury in finding the absence of any notice to plaintiffs that defendant claimed a lien on the rice in question, until about two months after the purchase, ex-

Graham v. Fitzgerald.

cept such as the law might infer from the fact that it was or had been in his possession with knowledge of the broker and his clerk (who acted for plaintiffs) for the purposes of his business, the cleaning of the rice.

When notice of the purchase was given to the defendant, it does not appear that it was accompanied with any intimation that the purchase was incomplete, or upon any agreement or understanding that no provision was to be made for payment of his lien, or that no such lien existed.

No inquiry was made of him the answer to which reasonably would or was designed to influence plaintiffs' future action, nor does the evidence disclose any occasion when he was notified of any intended action, on the part of the plaintiffs, which would naturally be controlled or influenced by a disclosure of his claim upon the property. He was in no way negotiating with the plaintiffs, or having any dealings with them, nor was any inquiry made of him.

The defendant being in possession of the rice in question, as bailee, in the course of his business of cleaning it, as was known to plaintiffs, or their agent, they were bound to regard any rights of property, lien, or special interest he had in it, when attempting to deal with reference to it.

Possession of property constitutes notice to every one of the title of the possessor, and some very special circumstances must exist, in no way disclosed in this case, under or by virtue of which he can, without his consent, be deprived of his interest in it. His presence at the sale of the property to another, where he neither does or says anything to mislead the purchaser as to the character of his title or possession, in no way prejudices his rights (*Sahler* v. *Signer*, 44 Barb. 606; and to the same effect, *Bragg* v. *Boston, &c. R. R.* 9 Allen, 54; *Brown* v. *Bowen*, 30 N. Y. 519; *Manning* v. *Monaghan*, 28 Id. 585).

Estoppels are created between parties to a transaction from their failure to speak when good faith requires they should do so, or by giving misinformation as to matters which, from the nature of the transaction, tends to influence the conduct of the party with whom they are dealing. But third parties in some way connected with the subject of such dealings cannot

be affected in their rights therein, unless apprised of the character of the intended action, of the materiality of the information sought, and unless they designedly give such misinformation as is acted upon to the prejudice of the inquirer (*Turner* v. *Coffin*, 12 Allen, 401; *Andrews* v. *Lyon*, 11 Id. 349; *Manf's. & Trad. B'k* v. *Hazard*, 30 N. Y. 226; *Plumb* v. *Cattaraugus, &c. B'k*, 18 Id. 392).

Misinformation which a person gives as to his rights, to a mere casual inquiry, will not protect, although subsequently acted upon in reliance upon its correctness (*Young* v. *Bushnell*, 8 Bosw. 1); nor if given to a party to a bargain after it has been concluded (*Walrath* v. *Redfield*, 18 N. Y. 457).

The judge before whom the cause was tried erred in disregarding these principles, and in charging that defendant was bound to make his lien known when the plaintiffs notified him that they had purchased; that when he had notice of sale to any person, he must give notice of his lien at the same time; and in refusing to charge that defendant's silence, when he was notified of plaintiffs' purchase, did not estop him from asserting his lien.

The judgment should be reversed, and a new trial ordered, with costs to abide the event.

Judgment reversed.

