## NEW YORK COMMON PLEAS.

WILLIAM LESSELLS *et al.* agt. GEORGE A. FARNSWORTH.

*Lien — Of livery stable keeper — Extent of — Right to, not cut off by sale of the animals — Laws of 1872, chapter 498, as amended by chapter 145, Laws of 1880.*

Under chapter 498, Laws of 1872, as amended by chapter 145, Laws of 1880, a livery stable keeper has the right to detain horses until all charges for their board and keep are paid, provided he serves a notice, in writing, containing the amount of the charges and of his intention to detain the animals therefor.

The livery stable keeper has a reasonable time after the board becomes due in which to prepare his bill of charges and serve the notice of lien, and the right to such lien is not cut off by a sale of the animals by the owner before the statutory notice is given.

The statute is a remedial one and should be liberally construed.

The possession of the animals by the stable keeper is constructive notice to a purchaser of the right to the lien. (*Affirming S. C., ante,* 7**$3** _

*General Term, April,* 1886.

*Before* LARREMORE, *C. J.,* DALY *and* VAN HOESEN, *JJ.*

APPEAL by plaintiffs from an order of the general term of the city court reversing a judgment in favor of the plaintiffs, entered upon a verdict directed by the court at trial term.

The action was for the conversion of three horses. The defendant, a livery stable keeper, claimed a lien upon the horses for their keep from February to June, 1884, inclusive, under a contract with the owner, D. M. Walduck, from whom plaintiffs purchased said horses on June 11, 1884.

It appeared from the evidence that the defendant was notified of the sale to the plaintiffs on June 15, 1884, and that he did not give the notice of lien required by the statute until July 2, 1884.

*A. J. Delaney,* for appellants.

*Jacobs Brothers,* for respondent.

J. F. DALY, *J.*—According to the provisions of the statute which gives to livery stable keepers the right to detain horses until all charges for their keep or board are paid, no lien is acquired and no right of detention accrues until notice in writing of the amount of such charges and of the intention to detain the animals is first given to the owner (*chap.* 498, *Laws of* 1872, *amended by chap.* 145 *of the Laws of* 1880).

The question arising in this case is, whether the right to such lien is cut off by a sale of the animals before the statutory notice is given. If the answer to the question be in the affirmative, then the statutes giving the right to the lien are of little practical benefit to the persons for whose protection they were enacted. It is true that the livery stable keeper might serve

upon the owner daily notices of lien, and in that way only could possible loss be avoided; but a reasonable construction of the law does not require such an extraordinary proceeding to obtain the advantages promised by the statute (*Eckhard* agt. *Donohue*, 9 *Daly*, 214).

In the case cited, where the owner brought an action of re-plevin against the livery stable keeper for wrongful detention of a horse, it appeared that the notice of lien was not served until after demand of the animal and refusal to deliver. It was held that the livery stable keeper had a reasonable time, after the demand, to make up the account of his charges and serve it with the statutory notice. If this decision be correct, it ought to cover the case now under consideration, for it holds, in effect, that the service of the statutory notice of lien relates back so as to make lawful a refusal to deliver, which refusal, without a lien to sustain it, would certainly be unlawful against the owner as well as against a purchaser.

The reason given by the court was, that, the statute being remedial, a construction must be given it which would aid its enforcement; that as its provisions require not only notice, but an account of the charges where the account ran over a period of several months, and the livery stable keeper might not be prepared on the instant of demand to hand the debtor the bill of charges and notice, it would be in the power of the latter, if unscrupulous, to cut off the lien altogether by a sudden demand. In like manner it would be in the power of an unscru-pulous debtor, by a sale of the animals, to cut off the lien, unless, after demand by the purchaser, the keeper had a reasona-ble time to serve his notice and bill of charges, and I think we are bound to construe the statute so as to secure in every case, and under all circumstances, where innocent third parties will not suffer, the benefit of the law to persons it was intended to protect. See cases under the act giving a lien to boarding-house keepers, in *Misch* agt. *O'Hara* (9 *Daly*, 361).

The purchasers will not suffer by holding, in this case, that after their demand and notice of purchase, the stable keeper

had a reasonable time in which to perfect his lien.    The horses
were in his stable, and that is all the notice of lien which, in
any case, a third party can have.    No record is made of the
lien, as is suggested by chief justice McADAM, in *Ogle* agt. *King*
(*City Court, July,* 1884), and the possession of the animals by
the stable keeper is constructive notice of the right to the lien.

The decision of the supreme court, in *Jackson* agt. *Kasseall*
(30 *Hun,* 230), does not conflict with this view.    It was held
there that the rights of a mortgagee having a chattel mortgage
on the horses were superior to the lien of a livery stable keeper,
but the facts of the case show that the charges for keep, which
were the subject of the lien, were not incurred until after the
mortgage was given; that, in fact, the stable keeper boarded a
horse which was already subject to a mortgage lien.

There was no estoppel in this case, because the plaintiffs had
paid for the horses before they notified the defendant of the
sale.    The failure of defendant then to assert his lien, did not
injure nor affect the plaintiffs (*Graham* agt. *Fitzgerald,* 4 *Daly,*
178).

The order should be affirmed, and judgment in favor of de-
fendant entered upon the stipulation, with costs.

LARREMORE, C. J., and VAN HOESEN, J., concur.